**People of the State of Illinois, Plaintiff-Appellee, v. Angela Jones, Defendant-Appellant.**

**Gen. No. 49,721.**

First District, Third Division.

July 7, 1966.

Rehearing denied July 21, 1966.

R. Eugene Pincham and Charles B. Evins, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Upon a trial without a jury defendant was convicted of the illegal sale of narcotics and sentenced to ten to fifteen years in the State Reformatory For Women. The principal point made by defendant is that she was entrapped into making the "sale" by a special police informer who provided her with narcotics and that the State's failure to call the informer as a witness to controvert that part of her testimony relating to entrapment is fatal to its case.

It is admitted that on the night of January 21, 1964, an exchange of narcotics for money took place between the defendant and the police informer, one Archie Washington (named in the indictment as "Johnny Rogers,") at Vi's Lounge, near 79th and State Streets, in Chicago. A police officer was inside the tavern and witnessed the transaction. Upon completion of the sale, defendant and the informer left the bar, whereupon two officers arrested defendant and found in her possession certain marked bills which had previously been given to the informer by the police. This is not denied by defendant.

Defendant testified that she worked as a domestic employee in Niles, Illinois, but that on the day in question she had not gone to work because of inclement weather and because she had worked the night before at a party given by her employer. She testified that she had known the police informer, Archie Washington, since 1953; that he was a gambling partner of her boyfriend, Junior Henderson; and that the three of them were often together socially; that on the afternoon prior to her arrest, she had been at Junior's apartment; that Junior had left her there to clean up the place; that Archie came by and left an envelope (later shown to contain heroin), telling her that the parcel was for Junior. Archie then left the apartment, saying he would call back to see if Junior had returned. Subsequently Archie did phone and upon learning that Junior still had not returned, instructed defendant to bring the envelope to Vi's Lounge and to wait there for him or for Junior, whichever one came first. Defendant says she waited at the tavern until Archie arrived, that she recognized the police officer, but that nevertheless she went with Archie to the rear of the tavern and sat at the bar near the policeman.

Archie asked defendant for the envelope and in return gave her a roll of bills, which she put inside her glove. Defendant inquired whether the money represented

gambling winnings, for she knew that Archie and Junior had an arrangement to share the winnings or losses from their gambling efforts. Archie replied that the money was for Junior, and defendant, having before acted as a carrier of money between the two men, did not associate the payment of the money with the return of the envelope. The informer *was not* called as a witness, and the defendant's testimony, as hereinbefore given, of the events culminating in the alleged illegal sale remains uncontroverted.

██ The court in People v. Strong, 21 Ill2d 320, 172 NE2d 765, defined entrapment as existing:

" . . . if it appears that officers of the law or their agents incited, induced, instigated or lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing, and if a criminal design or intent to commit the offense originates in the mind of one who seeks to entrap the accused and who lures him into the commission merely for the purpose of arresting and prosecuting him, . . ." (P 324.)

In the Strong case, as in the present case, the defendant's unrebutted testimony was that a person working for the police as an informer provided the defendant with the narcotics that were later used as the basis for a charge of illegal sale. There, too, the State failed to call the informer as a witness to refute the testimony of the defendant. The court said that while the State was not obligated to call the police informer, as held in People v. Aldridge, 19 Ill2d 176, 166 NE2d 563, the unexplained failure to do so may give rise to an inference against the State.

The decision in Strong went even farther than holding that the providing of narcotics by police agents to those suspected of involvement in drug traffic is entrapment. In condemning the practice, the court said:

"While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the sine qua non of the offense." (P 325.)

██ In the instant case the State contends that the trial court was free to disbelieve the testimony of defendant and to conclude despite the absence of rebuttal testimony that she was guilty. The State cites People v. Glass, 16 Ill2d 595, 158 NE2d 639, where a conviction for illegal sale of narcotics was sustained despite the defendant's alibi that he was simply returning a package which had been mistakenly left in his room by the police informer. The court held that the evidence presented by the prosecution, taken with reasonable inferences therefrom, was sufficient to warrant the trial court's rejection of the defendant's explanation. The circumstances in People v. Glass, supra, are sufficiently similar to those in People v. Strong, supra, so that no meaningful distinction can be made in an attempt to reconcile them. In Glass, as in Strong, the defendant sought to negate guilt by testimony that the police informer was somehow able to vest possession of narcotics in the defendant and later make it appear to police officials that the defendant was selling the drugs to the informer. In Glass, however, the court *did not* discuss the problem thought to be controlling in the Strong case; that is, whether a conviction may be sustained where the prosecution does not present the informer as a witness to rebut the testimony of the defendant tending to prove that the informer sought to entrap the defendant. The

court's response to the issue raised in the Strong case makes it apparent that where crucial elements of the State's case depend upon the work of an informer, he must be called upon to controvert the testimony of the defendant tending to prove entrapment. This principle is especially applicable in the instant case, where the informer himself is an addict under indictment for narcotics violations. We consider the later ruling in Strong binding upon us.

██ The State argues that defendant in the instant case may not raise the defense of entrapment because she has denied the commission of any crime, and cites People v. Realmo, 28 Ill2d 510, 192 NE2d 918, in support of its contention. In that case the defendant was barred from raising the defense of entrapment where he denied "the commission of the acts constituting the offense"; that is, he not only denied selling narcotics, but denied having possession of the drugs. In other words, he denied being involved in the transaction. In the instant case the defendant does not deny that she was in possession of an envelope containing narcotics or that she gave the envelope to the informer and received the money. She has an explanation which, if accepted, exculpates her of the knowledge or intent necessary to constitute her acts criminal. This distinguishes the instant case from Realmo, supra. Under such circumstances the defendant is not precluded from asserting the defense of entrapment.

Defendant also charges that the indictment was defective in that it named the informer as "Johnny Rogers," whereas his correct and known name was Archie Washington. The state contends that in an indictment for the sale of narcotics, the name of the purchaser is not an essential element. It appears to us, however, that the use in an indictment of a special code name known only to the police is susceptible to abuse. We do not, however, decide the case on that ground.

Defendant's brief filed in this case consists of 94 pages of typewritten matter. In addition, defendant filed a reply brief of 37 pages and a supplemental reply brief of seven pages. The briefs are replete with extensive quotations from authorities. Counsel is experienced and should be aware of the demands on the court at this time. We expect him not only to adhere to the rules relating to these matters, but in a case such as the one before us, which presents relatively simple issues, to state his case briefly and simply.

The judgment is reversed.

Judgment reversed.

SULLIVAN, P. J. and DEMPSEY, J., concur.