THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT C. JENSEN, Defendant-Appellant.

First District (1st Division)    No. 61463

Opinion filed April 12, 1976.

Sidney H. Projansky, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Bertina E. Lampkin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant Robert C. Jensen was charged with violating section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, §6—303) by driving a vehicle on a public highway of Illinois while his license was suspended or revoked. He was convicted after a bench trial and sentenced to probation for 1 year and a fine of $300.

The only witness for the State was a Cook County Forest Preserve District ranger. He testified that at approximately 8:51 p.m. on April 27,

1974, while clearing an area of the Busse Woods North Forest Preserve, he saw the defendant. At that time the defendant was not around his vehicle. After the ranger called out to defendant, the latter came toward his car which was parked in an area provided by the Forest Preserve District. The ranger stated that he noticed that the defendant was "under the influence of something" while talking to him before asking him to move his car. The ranger also testified he had no idea how defendant's car got to the parking lot. The ranger told the defendant to move his vehicle and leave the area because the preserve was closing.

The defendant then got into his car, started it and drove about 10 feet, throwing the car in and out of gear. The ranger testified that the car at this time was on the "roadway." The ranger stopped the defendant, told him to get out of his car and asked for his driver's license. The defendant answered that he had no driver's license. Upon investigating, the ranger discovered that the defendant's license had been suspended. In response to the prosecutor's question, "You didn't care how he left as long as he left?" the ranger replied, "That's right, sir."

The defendant stipulated that his driver's license was suspended on the day in question. The defendant testified he had come to the preserve in the early afternoon, accompanied by a friend who drove the defendant's car because the defendant knew that having a suspended license he could not drive it himself. The defendant testified that he had become intoxicated at the picnic. When the picnic broke up, the person who had driven him left the preserve, but promised to come back to pick up the defendant. The defendant waited around the preserve for his friend from approximately 7 p.m. until the ranger arrived and told him to leave.

The defendant also testified that he was in the Forest Preserve District parking lot when the ranger first saw him. Asked whether before moving his car he told the ranger that he did not have a license, the defendant replied, "No, I didn't think about that. At the time I wasn't thinking too straight and I was afraid knowing that it was my car something like this might happen and sure it did."

This appeal raises two issues: first, whether the defendant was driving on a "highway" as that word is defined in section 1—126 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, §1—126); second, whether defendant was entrapped by the ranger into driving his automobile.

■■ The statute which the defendant was charged with violating forbids driving a motor vehicle only on a "highway" of the State of Illinois. The State emphasizes that the ranger testified that the defendant was on the "roadway" when he was stopped, but the record does not reveal whether the "roadway" was part of the parking lot. However, whether the defendant's driving was confined to the parking lot is not relevant in determining his guilt. "Highway" is defined in section 1—126

of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, §1—126) as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular traffic." This definition is broad enough to encompass publicly-maintained parking lots. The New York Supreme Court pointed out in *Ebert v. Incorporated Village of Garden City* (1960), 21 Misc. 2d 607, 608, 196 N.Y.S. 2d 878, 880, "While a municipal parking field is, as the word 'parking' implies, primarily a place where vehicles are left stationary and unattended, it is essential for the use for which it is provided that both cars and pedestrians have passageway on and through it."

The defendant relies on *People v. Kozak* (1970), 130 Ill. App. 2d 334, 264 N.E.2d 896, to support his argument that the Forest Preserve District parking lot was not a "highway" as that word is used in the statute. In that case, however, the defendant was charged with driving a vehicle in a private parking lot, and the court noted that the parking lot was not maintained or cleaned by any governmental body. Not being "publicly maintained," the parking lot could not come under the definition of "highway" in section 1—126 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, §1—126).

■■■ We have found no Illinois cases deciding whether a "publicly maintained" parking lot is a "highway." In *State v. Young* (1967), 95 N.J. Super. 535, 231 A.2d 857, the court applying a statute defining "highway" in terms identical to that of the Illinois statute decided that a parking lot controlled and meter-operated by a municipal parking authority was not a "highway" within the meaning of a statute making it unlawful to drive carelessly on a highway. We disagree with the *Young* decision. Though as the court pointed out in that case penal statutes are to be strictly construed, their construction should not be so strict as to defeat the clear intention of the legislature. (*Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293.) The Illinois statute adopts a broad definition of the word "highway." This is not a case in which literal interpretation of the language of the statute would lead to absurd results which the legislature could not have contemplated. The prospect of people driving in publicly-maintained parking lots with suspended licenses could be as offensive as their driving on a fast-moving expressway. The purpose of prohibiting persons from driving with a suspended license was clearly to prevent them from driving a car any place maintained by the public for the passage of traffic. We, therefore, hold that the defendant was driving on a highway with a suspended license.

■■ The State, citing *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872, argues that the defendant cannot claim entrapment because

he denies commission of the offense. However, in *Fleming* and similar cases, the defendant denied commission of the acts charged by the State. In *People v. Jones* (1966), 73 Ill. App. 2d 55, 219 N.E.2d 12, the defense of entrapment was not precluded where defendant admitted to the acts charged by the State, but claimed that she lacked scienter. There is even less reason to block the defendant from raising the defense of entrapment when, as here, his denial that he committed the offense is not based on any factual dispute with the State but rather on a legal disagreement as to the meaning of the word "highway." *State v. Taylor* (Mo. 1964), 375 S.W.2d 58, 62. See also *United States v. Rodrigues* (1st Cir. 1970), 433 F.2d 760; *State v. Fitzgibbon* (1973), 211 Kan. 553, 507 P.2d 313.

The definition of entrapment is set forth in section 7—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, §7—12), which provides:

> "Entrapment. A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

This definition and the relevant case law indicate that there are three essential elements to the entrapment defense. First, a public officer must actively induce the suspect to commit a crime. Second, the public officer's purpose must be to obtain evidence for the prosecution of the suspect. Third, the intent to commit the crime must originate with the officer, and not the suspect. If the suspect was "predisposed" to commit the crime, he cannot claim entrapment.

■■ Entrapment is an affirmative defense. (Ill. Rev. Stat. 1973, ch. 38, §7—14.) Section 3—2 of the Criminal Code of 1961, (Ill. Rev. Stat. 1973, ch. 38, §3—2) provides whenever the State or the defendant have introduced "some evidence" of entrapment, the State bears the burden of proving the absence of entrapment beyond a reasonable doubt. In this case, some evidence of each element of entrapment has been introduced, and the State has failed to disprove the existence of any of these elements beyond a reasonable doubt.

The evidence was sufficient to show the possibility of active inducement by the ranger. The ranger's request that the defendant move his vehicle was a strong inducement going beyond mere persuasion since the ranger was in uniform and acting under color of authority. Section 11—203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, §11—203) provides that "[n]o person shall wilfully fail or refuse to comply with

any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic."

The State argues that the ranger could not have intended to obtain evidence for the prosecution of the defendant since he did not know at the time he told the defendant to move his vehicle that the defendant's license was suspended. However, the defendant's view of the encounter is that the ranger intended to induce him to drive while intoxicated. If that assertion is correct, the fact that the ranger ultimately discovered that defendant had a suspended license, and opted to charge him with that offense instead of driving "under the influence" does not eliminate the element of entrapment. The defendant's assertion with respect to the ranger's purpose may not be correct, but it is supported by "some evidence" which the State has not disproven beyond a reasonable doubt. That the preserve was closing could explain an order to leave, but it does not satisfactorily explain the unusual conduct of an officer telling someone he knows is "under the influence of something" to move his vehicle.

Finally, the element of predisposition must be considered. Defendant's uncontradicted testimony was that a friend drove him to the preserve and that the defendant was waiting for his friend to return and drive him away. The ranger admitted he did not know who drove the car to the parking lot. The evidence that the defendant was not predisposed to drive the car with a suspended license was substantial enough to shift the burden to the State to prove predisposition beyond a reasonable doubt. The State has failed to do this. It relies heavily on the defendant's failure to volunteer to the ranger that his license was suspended when the ranger asked him to move his vehicle. Even in the confused and frightened state the defendant claims he was in, the defendant should have informed the ranger of his suspended license. However, his failure to do so under the circumstances does not prove criminal predisposition beyond a reasonable doubt.

■■ The record in this case contains evidence making entrapment a reasonable possibility. Because the State has failed to disprove any one of the three elements of entrapment beyond a reasonable doubt, the judgment of conviction must be reversed. It would be improper to remand, since the State does not claim that the trial court improperly excluded any evidence demonstrating lack of entrapment. (See *People v. Woodall* (1975), 61 Ill. 2d 60, 65, 329 N.E.2d 203; *People v. McCoy* (1970), 44 Ill. 2d 458, 256 N.E.2d 449; *People v. Brown* (1968), 99 Ill. App. 2d 281, 241 N.E.2d 653.) The judgment is reversed.

Judgment reversed.

BURKE and O'CONNOR, JJ., concur.