STATE OF NEBRASKA, APPELLEE, V. ALAN L. LICHTI, APPELLANT.
367 N.W.2d 138

Filed May 10, 1985.   No. 84-437.

Jeffrey H. Jacobsen, Buffalo County Public Defender, for appellant.

A. Eugene Crump, Deputy Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendant, Alan L. Lichti, was charged in the county court with second offense driving while under the influence of alcohol. He pled not guilty but was convicted following a bench trial. He was thereupon sentenced to jail for a period of 30 days, fined $500, had his driver's license suspended for 1 year, and was assessed costs. The conviction and sentence were thereafter affirmed by the district court. Lichti assigns as error to the district court (1) the failure to find the evidence insufficient to support the conviction; (2) the failure to find he was legally justified in driving, since he was doing so at the behest of a law enforcement officer; and (3) the failure to find that the trial court erred in not advising him of his rights under Neb. Rev. Stat. § 39-669.07(3) (Reissue 1984). Although we find the evidence sufficient to support the finding that Lichti was driving while under the influence of alcohol, we agree with his contention that the conviction and sentence cannot stand, as his driving was, under the circumstances, privileged. In view of that determination we do not consider his third assignment of error. The cause is reversed and remanded with the direction that the charge be dismissed.

In the early morning hours of July 27, 1983, Officer Larsen of the Kearney Police Department responded to a call reporting an unwanted person at the home of Lichti's brother, located on East 47th Street. When Larsen arrived, he found Lichti standing beside his car, which was parked, possibly with the motor running, on the south side of 47th Street, facing west, near his brother's residence.

Larsen testified that he talked with Lichti for approximately 3 to 4 minutes from a distance of 3 to 4 feet and, although he could recall no odor of alcohol, concluded that Lichti had been drinking because his speech was slurred and he did not always make sense, although not making sense did not appear to Larsen to be unusual for Lichti.

Larsen did not believe Lichti to be intoxicated to the point that his driving ability was impaired, and administered no field sobriety tests. Larsen testified on direct examination that he told Lichti he was not welcome at his brother's house and "requested that he leave and go straight home." On cross-examination Larsen answered affirmatively to the question "And you requested that he get into his car and drive home?"

Lichti thereupon drove west of 47th Street to a cul-de-sac, turned around and went east to Avenue N, made a U-turn, drove past his brother's house, and made another U-turn at Avenue L. At this point Officer Colling, who had been called as support for Larsen, stopped Lichti because he had seen Lichti drive over the street curb twice while traveling as described above.

Colling testified that Lichti had slurred speech, swayed when he walked, had a flushed face, and had an odor of alcohol on his breath. Colling asked Lichti to perform a number of field sobriety tests. Lichti was asked to touch the tip of his nose with both his right and left index fingers, but instead touched the side or bottom of his nose. Next, Lichti was asked to take five steps forward, touching the heel of one foot to the toe of the other, then turn around and take six steps back in the same manner. Lichti had difficulty maintaining his balance with this test, staggering and stopping periodically to regain his balance. Lichti's explanation at trial was that he was wearing cowboy boots at the time, which had pointed toes and slanted heels, causing him to do poorly on this particular test.

Lichti was also asked to pick up some keys from the pavement while standing on one leg and raising the other. When he bent over to pick up the keys, he lost his balance, fell to the left, spun around, and was not able to complete the test. Colling then asked Lichti for his driver's license and registration, but was handed some business cards instead.

Colling testified that in his opinion Lichti was driving while under the influence of alcohol, and consequently undertook to arrest him. Lichti resisted Colling's efforts to transport him to the sheriff's office, but with the assistance of two other officers, the arrest was completed.

A corrections officer who observed Lichti after the arrest testified that in his opinion Lichti was intoxicated.

Lichti testified that during a 4½-hour span on that evening, he had drunk four beers and a whiskey sour and had a six-pack of beer with him in the car.

As to the first assignment of error, Lichti contends that since the testimony of Larsen and Colling about his level of intoxication was not consistent, a reasonable doubt was raised about his guilt, and, therefore, there is insufficient evidence to sustain the conviction. This contention is without merit.

It is well established that in determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Morse*, 211 Neb. 448, 318 N.W.2d 893 (1982).

Colling's testimony supplies more than ample evidence to support the finding that Lichti was driving while under the influence of alcoholic liquor. Either a law enforcement officer's observations of defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving while under the influence of alcoholic beverages. *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984); *State v. Morse, supra; State v. Betts*, 210 Neb. 348, 314 N.W.2d 257 (1982); *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982).

The fact that Larsen concluded Lichti was not so under the influence of alcohol as to have impaired driving ability does not alter the fact that the evidence supports a contrary conclusion. As such, Lichti's first assignment of error must fail.

Lichti next argues that his conviction cannot stand, since he was driving at the direction of a police officer.

Neb. Rev. Stat. § 39-604(1) (Reissue 1984) provides: "Any person who knowingly fails or refuses to obey any lawful order of any law enforcement officer who is controlling or directing traffic shall be guilty of a traffic infraction."

We have said that "lawful" implies that the act in question is

" 'authorized, sanctioned, or at any rate not forbidden, by law.' " *State v. Reeves*, 199 Neb. 725, 728, 261 N.W.2d 110, 113 (1978).

To control is to dominate or rule. Webster's Third New International Dictionary, Unabridged 496 (1968). It is to exercise restraining or directing influence over another. Black's Law Dictionary 298 (5th ed. 1979).

*State v. Brown*, 107 Wis. 2d 44, 318 N.W.2d 370 (1982), presents a somewhat similar situation. Therein, Brown admitted that he had been traveling 72 miles per hour in a 55-mile-an-hour zone. He testified, however, that he had been traveling in the right-hand lane at the speed limit when he noticed a vehicle behind him swerving in a violent manner and traveling at a high rate of speed, coming within 10 feet of the rear of Brown's automobile. That vehicle then passed Brown's automobile and reentered Brown's traffic lane, slowing to a speed of approximately 15 to 25 miles an hour. When Brown attempted to pass the vehicle, it speeded up to match his speed and took a position in Brown's "blind spot." When Brown speeded up or slowed down, the vehicle matched Brown's speeds so as to maintain its position. That pattern of behavior continued until the vehicle displayed flashing red lights and signaled Brown to pull over. The trial court refused to give Brown's requested legal justification instruction. The Wisconsin Supreme Court reversed for a new trial, holding such an instruction should have been given. Although we do not accept all of that court's reasoning in reaching its result, we are persuaded that there are instances where the conduct of a law enforcement officer may excuse violation of the statute which prohibits driving while intoxicated. See, also, *People v. Jensen*, 37 Ill. App. 3d 1010, 347 N.E.2d 371 (1976).

The *Brown* facts are certainly more egregious than those presented here. We find no suggestion in the record that Larsen intended to have Lichti drive while intoxicated. On the contrary, the record leads us to conclude that Larsen simply misapprehended the extent of Lichti's intoxication. Nonetheless, irrespective of his intent, Larsen did command Lichti to drive. That command was a lawful order as contemplated by § 39-604(1). While it is true that to drive when

intoxicated is prohibited by law, the act of driving itself is not. Once Lichti was told to drive away, his choice was either to do as he was directed or to subject himself to the consequences of incurring a law enforcement officer's displeasure. He was effectively under Larsen's control. Under these circumstances we conclude Lichti's driving was privileged conduct for which he cannot be punished.

REVERSED AND REMANDED WITH
THE DIRECTION TO DISMISS.