McMILLAN, Judge.
The appellant was convicted of improper lane usage and driving under the influence in Montgomery County Court. She was fined $20 on the improper lane usage charge and given a three months’ suspended sentence in county jail and placed on unsupervised probation for one year on the driving under the influence charge. She was further ordered to complete DUI school.
I
The appellant argues that, because the citation which she was originally issued by the police officer, charged her with driving under the influence of alcohol and controlled substances, it materially varied from the evidence presented at trial, which only proved driving under the influence of alcohol. The appellant further contends that this citation should not have been amended in the complaint filed in circuit court without her consent; however, there was no amendment. Nerud v. City of Mountain Brook, 517 So.2d 652 (Ala.Cr.App.1987).
The record indicates that the circuit court complaint properly charged that the appellant:
“[D]id drive or was in actual physical control of the vehicle while there was .09 percent or more by weight of alcohol in her blood, or while she was under the influence of alcohol, or while she was under the influence of a controlled substance to a degree which rendered her incapable of safely driving, or while she was under the combined influence of alcohol and a controlled substance to a degree which rendered her incapable of safely driving, or while she was under the influence of any substance which impaired her mental or physical faculties to a degree which rendered her incapable of safely driving, in violation of Section 32-5A-191(a) of the Code of Alabama 1975 as amended”.
However, the original citation, which the appellant alleges contained the erroneous charge, is not included in the record for our review. “The burden is on the appellant to make sure the record is correct and complete.” Sanders v. City of Birmingham, 542 So.2d 325, 327 (Ala.Cr.App.1988). Furthermore, this issue was not preserved for review by proper objection. Vance v. City *158 of Hoover, 565 So.2d 1251 (Ala.Cr.App.1990). Therefore, this issue is waived.
II
The appellant alleges that she should not be held liable for the commission of a traffic offense which resulted directly from her obeyance of the order and directions of a state trooper. Specifically, the appellant argues that when the trooper stopped at the appellant’s vehicle to investigate or to see if he could render any assistance, and found the appellant asleep, his order made to her to move the car resulted in her being arrested for DUI. The appellant argues that § 32-5A-4, Code of Alabama (1975), makes it clear that no person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer who has lawful authority to direct, control or regulate traffic. Therefore, if she had failed to obey his order, she would have violated that statute.
The record indicates that, on the night in question at approximately 7:40 p.m., a state trooper observed a vehicle parked just off of 1-85 Highway, headed south. The state trooper stopped in order to determine whether he could render assistance and, he further testified, to determine “what was going on”, because the vehicle was parked there and the windows were rolled down. The trooper testified that, when he approached the vehicle, he observed the defendant lying in the vehicle, with her head on the passenger’s side and her feet on the driver’s side. He further testified that her skirt was pulled up, so that the lower part of her body was revealed. He testified that he walked around to the passenger’s side of the vehicle and “beat on the window to get her attention.” He testified that she “finally started moving” and that “by shining the light in her face, then I [the trooper] got her attention.” The trooper then advised her that her car did not “need to be here” and that she “need[ed] to go on.” The trooper then returned to his vehicle and next observed her driving into traffic. He further testified that he then “saw all the traffic in front of me just like stopping.” He subsequently determined the reason to be that the appellant’s vehicle was weaving from one lane to the next and the cars “had diverted action to avoid her.” The trooper testified that he pulled her over, approached her car, and asked if she had been drinking. He testified that he could detect the odor of alcohol from her breath and he asked her to step out of her vehicle. Furthermore, she was unsteady on her feet and she failed the alco-sensor test and field sobriety test which the trooper administered to her. The appellant was then arrested for DUI and issued a citation for improper lane usage. She was transported to jail where she was administered the Intoxilyzer 5000 test. She registered .091 percent of alcohol in her blood. The trooper then interviewed the appellant, who testified that she had drank three Margaritas and taken some medication before she began driving home. She stated that she felt she could not safely operate the vehicle, therefore she pulled off the road. She admitted to the trooper that she had been driving under the influence at the time she was stopped.
Because all of the State’s evidence tending to prove the appellant’s guilt of DUI and improper lane usage was derived after she was ordered back on the highway, this cause is due to be reversed. A person cannot be arrested or convicted for committing an offense which she was ordered, by an officer with lawful authority, to commit. See Brown v. State, 38 Ala.App. 312, 82 So.2d 806 (1955) (An intoxicated passenger in a private vehicle may not be ordered out of the vehicle and onto the highway by a police officer and then convicted of appearing on a public highway while intoxicated.)
Thus, in People v. Jensen, 37 Ill.App.3d 1010, 347 N.E.2d 371 (1976), a defendant was convicted of driving a vehicle on a public highway while his license was suspended after he was observed by a forest ranger in a forest preserve, just prior to its closing time, who requested the defendant to remove his vehicle. In holding that the defendant should have been allowed to raise the defense of entrapment, the court stated:
“The evidence was sufficient to show the possibility of active inducement by *159 the ranger. The ranger’s request that the defendant move his vehicle was a strong inducement going beyond mere persuasion since the ranger was in uniform and acting under color of authority. Ill.Rev.Stat.1973, ch. 95V2, § 11-203 provides that ‘no person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic.’ ”
Id. 347 N.E.2d at 375.
In People v. Jensen, supra, as in the instant case, the authority’s intent was not proven to have been to entrap the defendant. In People v. Jensen, there was evidence that the forest ranger did not know that the defendant’s license was suspended until he subsequently stopped the defendant, who was driving while intoxicated. Clearly there is a strong public need for preventing drivers who are under the influence of alcohol or drugs from driving and endangering lives.[1] Where the circumstances are such that a reasonable officer would suspect that a potential driver was under the influence, he should not order the driver back on the road. An officer who reasonably suspects an individual to be intoxicated or under the influence should not order him to drive. Many courts have condemned an officer’s conduct in knowingly permitting an intoxicated person to drive, in order to secure a charge of driving under the influence or driving while intoxicated. See Parham v. State, 156 Tex.Crim. 578, 244 S.W.2d 809 (1952) (“Such a practice on the part of peace officers should not be condoned. To do so would endanger the safety of those upon the highway in order that an officer might establish a more serious case.”) See also Turnham v. State, 491 S.W.2d 898, 900 (Tex.Cir.App.1973) Morrison, Judge (concurring) (“My brother Douglas cites Parham v. State, 156 Tex.Cir.R. 578, 244 S.W.2d 809, in footnote 1, supra, stating ‘Years ago this Court stated that it did not condone such practice [of peace officers letting an intoxicated person get into a ear and drive and then arrest him]’. I shudder to think that the majority is suggesting that the passage of years might dull a proposition so essentially sound.”) See also State v. Zito, 11 Kan.App.2d 432, 724 P.2d 149, 151 (1986) (“[T]he better law enforcement practice would be to attempt to prevent an intoxicated person from driving”.)
In the present case, the circumstances were such that a reasonable officer should have suspected that the appellant was under the influence. She was alone in a vehicle parked on the side of the highway at approximately 7:40 at night. Her body was twisted so that her torso was in the passenger’s seat, her feet were in the driver’s seat and her skirt was pulled up. The trooper testified that he had to beat on the window by her head and then shine his flashlight in her face before he could get her attention. Under these facts, intoxication by alcohol or drug usage was a strong possibility, see Beals v. State, 533 So.2d 717 (Ala.Cr.App.1988), and should have warranted further investigation before ordering the person to drive on a public highway.
In the present case, although the State presented evidence from which a jury could reasonably conclude that the appellant was driving under the influence, all such evidence was gathered after the appellant was ordered back on the highway and, therefore, must be excluded as fruit of the poisonous tree. Thus, in State v. Runner, 310 S.E.2d 481, 485 (W.Va.1983), the court held:
“As indicated by the instructions submitted to the jury, the State’s theory of this case [of public intoxication] is that the appellant was intoxicated while a passenger in the pickup truck traveling upon a public highway. However, it is clear from the record that the conduct of the appellant while a passenger in the pickup *160 truck was insufficient to constitute probable cause for arrest for public intoxication. The arresting officer cited no facts or circumstances in his testimony below from which a prudent person could form a belief that the appellant was intoxicated while inside the truck. The officer did not observe any manifestations of intoxication until after the appellant was ordered out of the vehicle in the parking lot of the Masonic Lodge. Accordingly, the prosecution cannot rely on the appellant’s conduct after he exited the truck to show that he was intoxicated while riding as a passenger in a private vehicle upon a public road. See Brown v. State, 38 Ala.App. 312, 82 So.2d 806 (1955).”
But see People v. Kaeppel, 74 Misc.2d 220, 342 N.Y.S.2d 882, 884 (1973) (wherein the court found no entrapment by police officers where a defendant who was clearly intoxicated at a restaurant was allegedly ordered by a police officer to drive away and the court noted that “[although the defendant cannot be charged with any violation of law committed prior to his entering the restaurant property, the fact is that he was driving prior to his entering the restaurant property (there is no dispute to this fact), and he drove when he left the restaurant. The offense in the instant case is a continuing one and the police officers did nothing to induce the defendant into committing the act.”)
In comparison, in Evans v. State, 690 S.W.2d 112 (Tex.App.1985), an appellant, who was originally stopped by an officer, exhibited clear indications of intoxication, however, after a radio check by the officer disclosed several outstanding traffic warrants and “[bjecause of appellant’s polite demeanor and the light traffic, [the officer] decided to give appellant ‘a break’ on the DWI.” The officer instructed the appellant to drive to the police station, but because of the appellant’s difficulty in driving, the officer again pulled him over and placed him under arrest. The court held that “[t]he offense was complete at the time of the initial stop, prior to any involvement by [the officer].” There was ample evidence introduced concerning the appellant’s intoxication before he was ordered back on the road. However, the court noted that “[h]ad appellant been prosecuted for a distinct new offense caused by both his pre-existing intoxication and [the officer’s] order to drive to the police station, [such as involuntary manslaughter], a different result might obtain.”)
The policy reasons behind this holding supports the importance of eradicating the drunken driving problem. Recently, the United States Supreme Court held that the overriding importance of this policy justified the intrusion on motorists stopped briefly at checkpoints. Michigan v. Sitz, — U.S. -, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The Court stated:
“No one can seriously dispute the magnitude of the drunken driving problem or the States’ interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation’s roads are legion. The anecdotal is confirmed by the statistical. ‘Drunken drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage.’ 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.8(d), p. 71 (2d ed.1987). For decades, this Court has ‘repeatedly lamented the tragedy.’ South Dakota v. Neville, 459 U.S. 553, 558 [103 S.Ct. 916, 920, 74 L.Ed.2d 748] (1983); see Breithaupt v. Abram, 352 U.S. 432, 439 [77 S.Ct. 408, 412, 1 L.Ed.2d 448] (1957) (‘The increasing slaughter on our highways ... now reaches the astounding figures only heard of on the battlefield’).”
Id. — U.S. -, 110 S.Ct. at 2485-86.
Because the State’s evidence secured subsequent to the officer’s order must be excluded, the State has presented no evidence of the appellant’s intoxication. Therefore, this cause is due to be reversed and remanded. See Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (holding that a defendant may be retried when a reviewing court determines that his conviction must be reversed because evidence was erroneously admitted *161 against him and that, without the inadmissible evidence, there was insufficient evidence to support his conviction.)
REVERSED AND REMANDED.
TAYLOR, P.J., and TYSON, J., concur.
PATTERSON, J., dissents with opinion; BOWEN, J., joins in dissent.

. As further indication of the emphasis placed on this policy in Alabama, it should be noted that under § 32-5A-191, Code of Alabama (1975), a person may be convicted of DUI who is in actual physical control of his vehicle, but not yet driving; even where he is asleep in his parked vehicle. See Martin v. State, 529 So.2d 1032 (Ala.Cr.App.1988); Beals v. State, 533 So.2d 717 (Ala.Cr.App.1988).