**The STATE of Ohio, Appellant,**

**v.**

**MELVAN, Appellee.**

[Cite as *State v. Melvan* (1992), 80 Ohio App.3d 443.]

Court of Appeals of Ohio,
Gallia County.

No. 91CA26.

Decided June 2, 1992.

444

C. *Jeffrey Adkins*, Assistant City Solicitor, for appellant.
*Richard Roderick*, for appellee.

HARSHA, Judge.

This is an appeal by the state of Ohio, plaintiff-appellant, pursuant to R.C. 2945.67 and Crim.R. 12(J) from an entry of the Gallipolis Municipal Court granting the motion of Anthony J. Melvan, defendant-appellee, to suppress the results of a BAC Verifier test in an OMVI prosecution.

Appellant assigns the following error:

"The trial court erred by suppressing the traffic stop of the defendant-appellee, Anthony J. Melvan, as the state highway patrolman had a reasonable and articulable reason for the traffic stop."

On May 3, 1991, the state charged appellee with operating a motor vehicle with a breath-alcohol content in excess of the statutorily proscribed limit in violation of R.C. 4511.19(A)(3), a misdemeanor of the first degree. Appellee entered a plea of not guilty to the charge and subsequently filed a motion to suppress the BAC Verifier test result on the stated grounds that the officer lacked probable cause for the arrest, the RFI survey was not properly conducted, and the BAC Verifier was not properly calibrated.

At the hearing on appellee's suppression motion, each side presented one witness. Trooper Danny Hopkins of the Ohio State Highway Patrol testified, in pertinent part, as follows. On May 2, 1991 at 11:35 p.m., Trooper Pack stopped appellee's car because of a defective exhaust system. Trooper Pack administered a portable breath test to appellee, which registered a yellow warning light, indicating a breach alcohol content of .04 to .099, i.e., below the limit specified in R.C. 4511.19(A)(3). Trooper Pack allowed appellee to drive away with only a warning for his loud exhaust. Approximately one hour later, Trooper Hopkins noted appellee's car had an "extremely loud" exhaust and so he began following appellee. Trooper Hopkins was, at that time, unaware that appellee had been stopped less than an hour prior to that time by Trooper Pack.

Trooper Hopkins observed appellee's car weaving back and forth constantly and touch the center line once. Based upon his observations of the loud exhaust and weaving, he stopped appellee's car. When appellee exited his car, Trooper Hopkins noticed an odor of alcohol about appellee. Trooper Hopkins then had appellee perform field sobriety and horizontal gaze nystagmus tests. Appellee failed his field sobriety test and scored the maximum result of six points on his horizontal gaze nystagmus test. Based upon these tests, the odor of alcohol, and appellee's vehicle's weaving, Trooper Hopkins placed appellee under arrest for operating a motor vehicle while intoxicated. At that time, appellee advised Trooper Hopkins that he had been stopped by another officer a few minutes prior to that time and had been allowed to go. Appellee

admitted to Trooper Hopkins that he had consumed four beers. Trooper Hopkins then administered a BAC Verifier test to appellee and obtained a .14 test result.

On cross-examination, Trooper Hopkins opined that Trooper Pack may have operated the portable breath test equipment incorrectly or that appellee may have consumed two or three more beers during the period between appellee's two traffic stops.

Appellee testified as follows. On May 2, 1991, he and two other people had been fishing and drinking beer. Appellee had consumed four beers while he was fishing. When appellee proceeded to drive one of his two friends home, he was stopped by Trooper Pack near Buck Ridge Apartments. The officer gave him a warning for a loud exhaust and also had appellee take a portable breath test and field sobriety tests. After the tests, the officer told him to "just get home" and to "go on home." Appellee admitted at the suppression hearing that his muffler was "pretty loud" on the date in question.

Instead of driving straight home, appellee took his remaining passenger into town in order for him to get some medication before appellee and he drove back home to Addison Township. On his way back home, Trooper Hopkins stopped him and eventually arrested him. Appellee testified that he had nothing to drink between the two stops, although his remaining passenger had been drinking while in his car. Appellee denied driving improperly prior to Trooper Hopkins's stop of his vehicle. Appellee noted that he had no reason as to why he performed poorly on the tests administered by Trooper Hopkins when he had satisfactorily completed such tests for Trooper Pack only fifty-five minutes earlier.

At the conclusion of the evidence, appellee's counsel asserted that appellee's BAC Verifier test result should be suppressed because: (1) the stop was invalid since Trooper Hopkins never cited appellee for a loud muffler, weaving, or driving left of center; and (2) it was improbable that someone could do as poorly on tests as Trooper Hopkins testified when he had passed similar tests fifty-five minutes earlier. Appellant's counsel contended that the stop and arrest were valid and that appellee must have ingested alcohol during the period between the two stops. The trial court then orally granted the suppression motion and noted the following reasons in the record for its ruling:

"I suppose what it boils down to uh, I don't know, if it's quote technically double jeopardy but uh, you know, uh, there is one court case that says that one can't be uh, convicted of two DWI's that arise out of the same incident. So, you can't be going down the road and get caught twice.

" * * *

"In my reasoning, I'm just simply going to state that an officer had already tested this guy, he came out apparently clean under those tests. Understandably, you know, maybe Officer Hopkins has a little bit better uh, and maybe a little bit more experience and maybe he would have found it had he caught him the first time, but, but I just don't think that within a span of less than an hour uh, you know there should be another bite of the apple so to speak by an officer to grab this guy for, for a DUI and that's my, the Court's reasoning in this case. So again, whatever the State desires to do they can do, but that's what the Court's going to decide in this case."

On August 23, 1991, the trial court filed an entry granting appellee's suppression motion.

Appellant's sole assignment of error asserts that the trial court erred in suppressing the traffic stop of appellee. In this regard, appellant contends that the trial court's rationale that suppression was warranted on the basis that appellee had been previously stopped and tested by another officer less than an hour earlier was erroneous. Neither the parties nor the court below cite any specific authority in support of the court's rationale.

In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, at 4–5, 1991 WL 13824. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. Cf., *e.g., State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, at 4, 1991 WL 87312; see, also, *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

Where factual issues are involved in determining a motion, the court shall state its essential findings "on the record." Crim.R. 12(J). Although appellant failed to request any findings in the case at bar, see, *e.g., State v. Benner* (1988), 40 Ohio St.3d 301, 533 N.E.2d 701; *Bryan v. Knapp* (1986), 21 Ohio St.3d 64, 21 OBR 363, 488 N.E.2d 142, the trial court proceeded to state its rationale for granting appellant's suppression motion on the record. As noted by both parties on appeal, the trial court based its ruling on the reason that appellee could not be charged with a violation of R.C. 4511.19(A) for the same conduct that another officer had earlier found acceptable. In so holding, the trial court mentioned that this might be based upon considerations of double

jeopardy, stating that one court had held that a person could not be convicted of two violations of R.C. 4511.19(A) when they arose from the same incident.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment and provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. See, also, Section 10, Article I, Ohio Constitution. The Double Jeopardy Clause embodies three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *Grady v. Corbin* (1990), 495 U.S. 508, 516, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548, 561, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665.

■ In *State v. Anderson* (1989), 57 Ohio App.3d 108, 566 N.E.2d 690, a majority of the panel in a Ninth District Court of Appeals case held that the Double Jeopardy Clauses of the United States and Ohio Constitutions forbid the prosecution of a defendant for drunk driving by a political subdivision when that defendant had already been placed in jeopardy by another political subdivision of the same state for the same offense, stemming from the same underlying course of conduct. Cf. *State v. Smith* (1991), 61 Ohio Misc.2d 165, 575 N.E.2d 1231 (no double jeopardy problem when defendant was being prosecuted in Ohio for DUI after he had been tried and convicted in Kentucky for DUI based on the same incident). In *Anderson, supra,* the defendant had pleaded guilty and was convicted of operating a motor vehicle while under the influence of alcohol in one municipal court and sought dismissal of a similar charge in Wadsworth Municipal Court which had occurred two minutes after the other charge. The appellate court held that double jeopardy considerations mandated dismissal of the second charge.

In the case at bar, however, appellee was never charged with a violation of R.C. 4511.19(A) as a result of being stopped by Trooper Pack. There was no "acquittal" concerning the first incident and there was no prosecution resulting from the first incident. Consequently, *Anderson* is inapposite, and double jeopardy did not preclude the instant prosecution pursuant to R.C. 4511.-19(A)(3). Therefore, the trial court's legally unsupported basis for granting appellee's suppression motion was erroneous. Cf., *e.g.,* *State v. Merritt* (Vt.1988), 149 Vt. 529, 546 A.2d 791 (state was not estopped from prosecuting defendant for drunk driving by virtue of the arresting officer's failure to take him into protective custody upon determining that the defendant was intoxicated).

■ However, in order to support a reversal of a judgment, the record must show affirmatively not only that error intervened, but that such error was to the prejudice of the party seeking such reversal. *Gries Sports Enterprises, Inc. v. Cleveland Browns Football Co.* (1986), 26 Ohio St.3d 15, 28, 26 OBR 12, 23, 496 N.E.2d 959, 970; *Lowry v. Lowry* (1988), 48 Ohio App.3d 184, 190, 549 N.E.2d 176, 181. A reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174.

■ On appeal, appellee notes that when Trooper Hopkins arrested him, he "was carrying out the instruction of that [*i.e.,* the first] particular officer." Although appellee cites no specific case law regarding this, we note that there is authority for the proposition that a person may defend against a charge of drunk driving if the person operated the vehicle at the direction of a police officer. *Adams v. State* (Ala.App.1990), 585 So.2d 156; *Gilbreath v. Anchorage* (Alaska App.1989), 773 P.2d 218; *State v. Lichti* (1985), 219 Neb. 894, 367 N.W.2d 138. In *Lichti,* the Supreme Court of Nebraska held that a conviction of driving under the influence could not stand where the defendant was driving at the direction of a police officer since another section of Nebraska's criminal statutes proscribes any person from knowingly failing or refusing to obey any lawful order of any law enforcement officer. See, also, *Adams, supra.* Similarly, in the instant case, R.C. 4511.02(A) provides that "[n]o person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."

However, assuming, *arguendo,* that the foregoing line of cases is correct, a second stop of a vehicle is proper where it occurs when the defendant fails to comply with the lawful order of the first officer. *Fullmer v. Jensen* (1986), 221 Neb. 582, 379 N.W.2d 736. Here, it is uncontroverted that after Trooper Pack told appellee to go home, he instead drove into town to his passenger's house and only then headed back home, letting fifty-five minutes elapse from the time of Trooper Pack's arguable "lawful order." Consequently, we are persuaded that, as a matter of law, none of the above cases supports the trial court's suppression ruling.[1]

---

**1.** In *Lichti, supra,* the Nebraska Supreme Court noted that the mere fact that the first officer stopping the defendant did not conclude that the defendant was so under the influence of alcohol as to have impaired driving ability did not *per se* preclude a second officer stopping the defendant thereafter from so concluding. The *Lichti* court found that such issue regarding the weight of the evidence, *i.e.,* which officer's testimony was more reliable, was best resolved at trial. Appellee's argument below was partially premised on the same contention. However, we are persuaded, as was the Nebraska Supreme Court, that such contention seems better suited for trial. In other words, this argument would arguably not

At the motion hearing, appellee's main contention was that suppression was warranted because the stop by Trooper Hopkins was invalid. Trooper Hopkins testified that he stopped appellee because of his car's noisy muffler and his observations of appellee's car weaving back and forth. Appellee denied any improper driving but admitted that his muffler was "pretty loud."

 The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272. In order to warrant a brief investigatory stop pursuant to *Terry*, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 111. Although the court below could have properly discounted Trooper Hopkins's reliance on weaving based on appellee's denial, see, *e.g.*, *State v. Jackson* (1991), 57 Ohio St.3d 29, 35, 565 N.E.2d 549, 557, it was uncontroverted that appellee's car muffler was loud. Excessive or unusual noise from a muffler or car exhaust system is prohibited by R.C. 4513.22. Therefore, a loud muffler provides reasonable suspicion to warrant the stop of a motor vehicle. *State v. Richmond* (Sept. 14, 1990), Portage App. No. 90–P–2152, unreported, 1990 WL 132257; *State v. Wilson* (July 22, 1987), Wayne App. No. 2227, unreported, 1987 WL 15064.

Based upon all of the foregoing reasons, the trial court committed prejudicial error in granting appellee's suppression motion. Accordingly, appellant's assignment of error is sustained, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., concurs.

GREY, J., dissents.

---

support the suppression ruling in the instant case. Because the court below relied upon an erroneous quasi-double jeopardy basis to decide the suppression motion, it failed to reach the issues of (1) whether Trooper Hopkins had specific and articulable facts tantamount to a reasonable suspicion to stop appellee's car; and (2) whether Trooper Hopkins possessed probable cause to arrest appellee for operating a motor vehicle while intoxicated. On remand, the trial court should therefore decide such issues.

GREY, Judge, dissenting.

I respectfully dissent. I would affirm the decision of the trial court because I am, like the trial judge here, an imprecise speaker.

I do not believe that the trial court, when it used the phrase "double jeopardy," was intending to apply that doctrine to this case. It was just a manner of speaking, a way of describing the unique factual situation here. It was not an application of an incorrect legal standard to the facts in this case.

My review of the record leads me to find that the trial court reached these conclusions. The trial court found that Trooper Pack tested Melvan and, finding him not to be under the influence, allowed him to proceed. Trooper Hopkins, hearing the loud muffler as Pack had, also had the right to stop Melvan. There is no question about the legality of either stop, but the motion to suppress raised the question of whether Hopkins had probable cause to arrest Melvan for DUI.

If you accept Trooper Hopkins's testimony, then clearly the state met its burden of proof and the motion should not have been granted. But the court also had to consider the fact that shortly before, Trooper Pack had reached a different conclusion about Melvan's condition. After considering the conflict, the court held that although it was a close question, the state had failed to meet its burden of proof on probable cause.

I agree when the majority opinion says that we must be bound to the facts as the trial court finds them. I will concede that the trial court's comments cited in the majority opinion are not as precise as we might like, but the court was speaking extemporaneously. I would not inflate an imprecise use of words, however, to find error as a matter of law. The correct standard was used by the trial court in this case. It had to decide as a matter of fact whether Trooper Hopkins had probable cause to arrest Melvan for DUI. In light of Trooper Pack's action, the court found that the facts needed to show probable cause were not proven.

The majority opinion suggests, in a footnote, that the trial court on remand should decide if Hopkins had probable cause to make a DUI arrest. I think that has already been decided, that the court has already found that he did not. I would affirm.

Thus, I dissent.