The STATE of Ohio, Appellee,

v.

STOLICH, Appellant.

[Cite as *State v. Stolich* (1995), 103 Ohio App.3d 349.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 94–CA–59.

Decided April 19, 1995.

*Alan G. Anderson,* for appellee.

*Mitchell W. Allen,* for appellant.

FAIN, Judge.

Defendant-appellant, Tammy E. Stolich, appeals from her conviction and sentence, following a no contest plea, for operating a motor vehicle under the influence. Stolich contends that the trial court erred by finding her guilty in view of her proffered defense that she was merely following the orders of a police officer when she drove her car while intoxicated. We conclude that the evidence in the record did not require the trial court to find that Stolich was operating under the orders of a police officer when she drove her car while intoxicated. Accordingly, the judgment of the trial court is affirmed.

## I

Stolich tendered a plea of no contest, and the case was submitted to the trial court upon certain stipulations of fact and Stolich's testimony, both on cross-examination and direct-examination. The stipulations of fact were recited into the record as follows:

"1. That the defendant, Tammy Stolich, and Roger Conley, were investigated by [a] Beavercreek Police Department officer and we believe it is Officer Wilson on February 12, 1994, at 12:22 a.m. when he investigated their car parked at the conservancy area in the city of Beavercreek.

"2. The check of the I.D. of both occupants of [the] vehicle showed that there was an active warrant for Roger Conley.

"3. The Greene County Sheriff's office was called to handle the warrant issue.

"4. Mr. Conley was intoxicated.

"5. Greene County Sheriff's officers arrived and took custody of Mr. Conley.

"6. Approximately ten minutes after the first contact, which was about 12:22 in the morning, Tammy Stolich was allowed to leave the area, driving the vehicle which she and Mr. Conley had been in.

"7. At 1:23 in the morning of February 12, 1994, the defendant, Tammy Stolich, was stopped for marked lanes and [a] DUI violation by Deputy Pettiford, Greene County Sheriff's office, off U.S. 68 at Jacoby Road.

"8. There was probable cause for the stop.

"9. Tests were given and a valid intoxilyzer test was administered and the defendant tested .262.

"10. There was proper jurisdiction.

"11. There was no search of the defendant's vehicle by the Beavercreek Police Department."

Stolich then testified, both on direct examination and on cross-examination. Her testimony on direct examination included the following:

"Q. Okay. Did a police officer come up to your car?

"A. Yes.

"Q. All right. Did he have any discussion with you?

"A. He asked for identification.

"Q. And did you produce that identification?

"A. Yes.

"Q. Okay. Did he have any other discussion with you?

"A. Not really.

"Q. Okay. At any point did he—at some point did you leave that area?

"A. Yes.

"Q. Okay. Did anyone tell you to leave that area?

"A. Yes, he brought by I.D. back to the car and told me—

"Q. Okay. He who?

"A. The officer.

"Q. Okay.

"A. Told me to go on home.

"Q. Okay. And did you go home after that point?

"A. Well, I intended to, but I was out in the country in an area I'm not familiar with and I got lost."

On cross-examination, Stolich's testimony included the following:

"Q. Okay. Okay. So the Beavercreek officer told Roger to come with him?

"A. Mmm-hmm.

"Q. And he took him away?

"A. (Indicated in the affirmative.)

"Q. What happened? And then you were—

"A. Well, they stayed there. He didn't take him away. He just took him to his car.

"Q. Took him to his car?

"A. Mmm-hmm.

"Q. Right. And then you stayed in your car?

"A. Right.

"Q. What happened immediately after that? What happened next?

"A. He brought my license back and handed them [*sic*] to me and told me I was free to go home.

"Q. Did you have any discussion with him about what was going to happen to Roger?

"A. No.

"Q. Did you say anything or talk to him at all about bond or to get bond for Roger?

"A. No, I don't believe so.

"Q. Okay. Could you have told the officer that you would go get bond, try to find a bondsman for him?

"A. No, I did not.

"Q. Okay. And was the officer at all concerned to you about having the car parked or getting it moved from where it was parked, was there any discussion about illegally parked or anything like that?

"A. No.

"Q. And when the—. Okay. Did the officer have you do any field sobriety tests?

"A. No.

"Q. Nothing like that at all. And just had basically the kind of contact that you testified here to, is that—

"A. Right? He just—

"Q. Most of the attention would be fair to say, was focused on Roger?

"A. Right."

Following Stolich's testimony, argument was presented by counsel for both parties. Following the argument, the trial court found Stolich guilty on the no contest plea, and imposed sentence accordingly. Stolich appeals from her conviction and sentence.

## II

Stolich's sole assignment of error is as follows:

"The trial court erred in failing to recognize, as a defense to a DUI charge, the fact that the state through its police officers had instructed defendant to drive in the same condition that led to the DUI charge."

Essentially, Stolich contends that because she had received an order to drive her car away from the place where it was parked, she had the unacceptable choice of either refusing to obey the order of a police officer, or driving while she might be, and was in fact, intoxicated.

Stolich acknowledges that she has not found any Ohio cases directly on point, but cites *State v. Melvan* (1992), 80 Ohio App.3d 443, 449, 609 N.E.2d 595, 599–600, as a case in which some sympathy was expressed for the proposition that following the direction of a police officer is a defense to a charge of drunk driving. In that case, the first officer to stop the defendant told him to go home, but it appeared that the defendant made no effort to do so. Consequently, the court of appeals concluded that the defense was not available to the defendant in that case, even if it would otherwise be a valid defense, because he was not following the direction of a police officer when he was stopped the second time.

We, also, would find some sympathy for Stolich if we could accept as proven her proposition of fact that she had been ordered to leave the scene by the police officer who arrested her companion, Roger Conley. However, we cannot accept this proposition of fact as having been proven to the satisfaction of the trial court.

In her direct testimony, Stolich was asked whether anyone had told her to leave the area. In response to that question, Stolich asserted that the police officer who arrested Conley had told her to go on home. However, on cross-examination, in response to a more open-ended question ("What happened immediately after that, what happened next?"), Stolich testified that the officer told her she "was free to go home."

On this record, we conclude that the trial court could have found that the police officer who arrested Stolich's companion merely told her that she was free to go home. In so advising Stolich, the police officer may not have been using his

best judgment, since Stolich tested .262, a high concentration of alcohol, an hour later. However, permitting an individual to leave is not the same as directing, ordering, or requiring the individual to leave the scene. Even if we assume the defense of following the direction of a police officer is a valid defense, we conclude that the trial court was not required to find the necessary factual predicate on this record. Accordingly, the trial court could find, as it did, that Stolich was guilty of the offense charged.

Stolich's sole assignment of error is overruled.

### III

Stolich's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY and FREDERICK N. YOUNG, JJ., concur.