Defendants-appellants, Diane Richardson-Byrd ("Byrd") and Pamela Plummer ("Plummer"),[1] separately appeal their convictions in the Warren County Court of Common Pleas for aggravated burglary and assault. Due to the similarity of the factual issues involved as well as some of the legal issues involved, we have consolidated these two appeals sua sponte pursuant to App. R. 3(B).
Appellants were both indicted on November 17, 1997 for one count each of aggravated burglary in violation of R.C.2911.11(A)-(1) and one count each of assault in violation of R.C. 2903.13(A). The charges stemmed from an incident that occurred on October 21 or 22, 1997, wherein appellants allegedly forced their way into the apartment of Jodi Fields ("Fields") and assaulted her in front of her two children.[2] A joint jury trial[3] held on May 11-12, 1998 revealed the following facts:
On the night of the incident, Carol Reeves ("Reeves") lived in the same apartment complex as did Fields, two doors down the hall. Reeves was up that night caring for her newborn son when she noticed a "loud car" pulling in front of the apartment complex with no headlights on. Reeves observed appellants get out of the car. Thereafter, Reeves heard the hallway doors open and close. Soon afterwards, Reeves heard screaming in the hallway and a voice saying "Let me in, bitch" followed by another voice saying "Get out, get out." Reeves stepped out of her apartment, and while keeping a foot inside her door so it would not close, saw appellants forcing and pushing their way into Fields' apartment. Reeves testified that while she could not see Fields' door, which was recessed from the hallway by about eighteen inches, she could nevertheless see who was at Fields' door. While still in the hallway, Reeves called 911 from a cordless phone she had in her hands. Following appellants' departure, Reeves went to Fields' apartment and gave Fields the cordless phone so she could call 911. Reeves testified that Fields was "all bruised up" and had blood all over her face and shirt.
Fields testified that she was awakened that night at about 2:40 a.m. by a knock on her door. Fields looked out the peephole but could not clearly see who was at her door. She then opened her door "just enough to get a glance." Upon recognizing appellants, Fields immediately told them to get out and tried to close her door. Instead, appellants pushed her door open and forced their way into her apartment. Fields testified that she tried to hold them back but was unsuccessful.
Once in Fields' apartment, appellants backed Fields into a wall and pulled her shirt over her head. Fields testified that during the ensuing fight, Plummer pulled her hair, pushed down and squeezed her neck very hard, and bit her in the back of her neck. Fields testified that Byrd grabbed her by the hair, pounded her on her back and the back of her neck, pulled her head down and "drove her knee into [her] nose," and kicked her on the legs with boots on. Maryanne Pollock Bath, M.D., a family practitioner who treated Fields on October 22, 1997, testified that Fields had bruises around her eyes, swelling around her eyes above her nose, and multiple bruises on her body, particularly on her arms, legs, and trunk.
Fields' six-year-old son Philip testified that he was awakened by the knock on the door. At the time, Philip was sleeping on the couch in the living room. Philip testified that when his mother went to the door and opened it, appellants pushed the door in and put his mother's shirt on her head. Fields' nine-year-old daughter Courtney testified that she woke up in her bedroom when her mother hit the wall. Courtney explained she knew it was her mother that had hit the wall because when she came out of her bedroom, she saw her mother on the floor by the wall. Courtney testified that before she ran back to her bedroom, she saw Plummer hurting her mother and Byrd hitting her mother on the nose.
Appellants both testified that they went to Fields' apartment so that Plummer could resolve a serious dispute between her and Fields. Plummer explained what led to that dispute. Following Plummer's marriage to Fields' uncle, Plummer and Fields became close. At some point in their relationship, Plummer confided to Fields that Plummer's daughter Kelly had been molested at the age of two and one half years. In the fall of 1997, Fields told Kelly about the molestation. This caused a rift between Plummer and Fields, who both admitted at trial that they had been harassing each other over the phone before the incident. Plummer testified that she went to Fields' apartment with Byrd to attempt to resolve the matter by talking with Fields and asking Fields to talk to Kelly. Byrd testified that she accompanied Plummer to the apartment because she knew that Fields' boyfriend could be abusive.
Appellants testified that as soon as Fields opened her door, Fields "went crazy," grabbed Plummer by the hair, and pulled her into the apartment where they both fell to the ground after hitting a wall. Plummer testified that she hit Fields to try to get her off of her. Plummer also testified that Fields was not hitting her but that she had both of her hands on Plummer's hair and that Byrd broke up the fight by taking Fields' hands off of her hair. Byrd denied hitting Fields. Byrd testified that she only broke up the fight by separating Fields and Plummer. Appellants both denied forcing their way into Fields' apartment.
On May 12, 1998, a jury found both appellants guilty as charged. By separate judgment entries filed the same day, the trial court sentenced appellants each on both the aggravated burglary count and the assault count. Appellants each filed a timely appeal, in which they each raised two assignments of error. Appellants' respective assignments of error will be addressed out of order.
Byrd's second assignment of error reads as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED MS. BYRD'S CONSTITUTIONAL RIGHTS IN OVERRULING HER CRIM.R. 29 MOTION TO ACQUIT AS THE STATE FAILED TO PROVE THE VENUE OF THE ALLEGED OFFENSE [sic].
Byrd argues that the state failed to present evidence that the assault and/or the aggravated burglary took place in Warren County and thus, failed to prove venue. Byrd contends that as a result, her convictions should be overturned.
"Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecution unless it is waived by the defendant." State v.Headley (1983), 6 Ohio St.3d 475, 477. A defendant waives the right to challenge venue when the issue is raised for the first time in the court of appeals. State v. Loucks (1971), 28 Ohio App.2d 77,78. "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs
(1968), 14 Ohio St.2d 56, paragraph three of the syllabus.
At the close of the state's case, Byrd moved for a judgment of acquittal under Crim.R. 29(A). This motion was overruled. A review of the record finds no reference to an objection being made by Byrd as to venue during the trial. Neither at the close of the state's case nor at the conclusion of the trial was any objection to the state's failure to prove venue raised by trial counsel. Nor did Byrd advise the trial court at the time of sentencing why judgment should not be pronounced upon her. Having not raised and preserved this issue, we find that Byrd has waived her right to raise the issue of venue on appeal. As a result, we find it unnecessary to reach the merits of Byrd's argument. Byrd's second assignment of error is overruled.
Plummer's first assignment of error reads as follows:
 THE TRIAL COURT DENIED APPELLANT DUE PROCESS OF LAW IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS WHEN IT REFUSED TO ALLOW HER TO PRESENT TESTIMONY OF A WITNESS WHO WOULD HAVE TESTIFIED ABOUT EVENTS THAT OCCURRED PRIOR TO THE ALTERCATION.
When the defense first started to present its case, Plummer's counsel called Kelly Spray, Plummer's daughter, to testify. The trial court sustained the state's objection to Kelly's testimony on the ground that Kelly was not at Fields' apartment on the night of the altercation. At the close of the defense case, Plummer's counsel proffered that Kelly would have testified that Plummer and Fields had been close friends, that Fields had told Kelly she had been molested as a child, that Kelly had never heard before she had been molested, that as a result, Kelly started "acting up" which in turn upset Plummer, and that it was the reason Plummer went to Fields' apartment. The trial court refused to allow the testimony on the grounds that (1) it was cumulative to the testimony given both by Fields and Plummer, and (2) its probative value was "out-weighed by the prejudice to impeach or impair the character" of Fields. Plummer argues that the trial court's foregoing ruling violated her constitutional right to present defense witnesses.
Evid.R. 403 provides that:
 (A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 180. An abuse of discretion is more than an error of law and judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Steiner v. Custer (1940), 137 Ohio St. 448,451. A reviewing court "will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." State v.Long (1978), 53 Ohio St.2d 91, 98.
Plummer correctly states that a defendant's right to present witnesses in his own defense is "a fundamental element of due process of law." Washington v. Texas (1967), 388 U.S. 14, 19,87 S.Ct. 1920, 1923. In that case, Washington, who was prosecuted for murder, sought to introduce the testimony of a Charles Fuller, who was the only person other than Washington who knew exactly who had fired the shotgun and whether Washington had at the last minute attempted to prevent the shooting. Fuller had been previously convicted of the same murder and sentenced. A Texas procedural statute provided that persons charged as principals, accomplices, or accessories in the same crime could not be introduced as witnesses for each other. As a result, Fuller was not allowed to testify. The United States Supreme Court held that Washington was denied his right to put on the stand a witness who was physically and mentally capable of testifying to events he had personally observed, and whose testimony would have been relevant and material to the defense, in violation of the Sixth Amendment of the United States Constitution. Id. at 23, 87 S.Ct. at 1925.
While a defendant's right to present witnesses in his own defense is a fundamental element of due process, an "accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. Taylor v. Illinois (1988),484 U.S. 400, 410, 108 S.Ct. 646, 653.
After thoroughly reviewing the record, we find that the trial court did not abuse its discretion in not allowing Kelly to testify in Plummer's defense. Unlike in Washington, Kelly was not present at the scene of the incident and thus had not personally observed that night's events. Kelly's testimony, if allowed, would not have presented Plummer's version of the facts to the jury, and thus would not have proved or disproved any elements of the crimes charged. Rather, her testimony would have mainly showed that upon learning from Fields, allegedly for the first time, that she had been molested as a child, Kelly started "acting up" which in turn upset Plummer who thereafter decided to see Fields to talk to her. In that respect, Kelly's testimony would have been cumulative to Plummer's own testimony and Fields' admissions.
Indeed, both Plummer and Fields testified about their former close relationship and that Fields told Kelly about the molestation. Plummer testified that as a result of being told about the molestation, Kelly was upset which hurt and upset Plummer "because it traumatized Kelly for the rest of her life." Plummer also testified that she went to see Fields to ask her to talk to Kelly. The only thing Kelly would have testified to that was neither testified to by Plummer nor admitted by Fields was the fact that Kelly allegedly did not know about the molestation until Fields talked to her. However, we find that such can be easily inferred from Plummer's testimony. In addition, while Byrd was not testifying in Plummer's defense, the fact remains that they were jointly tried. The record shows that Byrd testified that they went to Fields' apartment so that Plummer could "try to make amends with [Fields] and tell her this is not true, tell Kelly this is not true."
We therefore find that if allowed, Kelly's testimony would have been cumulative and would have added relatively little. We further find that the testimony, while not proving or disproving any elements of the crimes charged, would have been prejudicial to Fields. Although offered solely to show its effect on Plummer's state of mind, the testimony, especially with regard to Kelly's hearing for the first time about the molestation from Fields, would have most likely affected the jury's impression of the alleged victim's character and would have had the potential for misleading the jury on other matters. In light of all of the foregoing, we hold that the trial court did not abuse its discretion in excluding Kelly's testimony. Plummer's first assignment of error is overruled.
Byrd's first assignment of error reads as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED MS. BYRD'S DOUBLE JEOPARDY RIGHTS IN CONVICTING AND SENTENCING MS. BYRD FOR BOTH ASSAULT AND AGGRAVATED BURGLARY, AS ASSAULT IS A LESSER INCLUDED OFFENSE OF AGGRAVATED BURGLARY AS STATUTORILY DEFINED.
Plummer's second assignment of error reads as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FOUND APPELLANT GUILTY OF AGGRAVATED BURGLARY AND ASSAULT, BECAUSE ON THESE FACTS THE CONVICTIONS VIOLATE THE DOUBLE JEOPARDY CLAUSE OF THE OHIO AND UNITED STATES CONSTITUTIONS.
Under their respective assignment of error, both appellants argue that they were improperly convicted of assault and aggravated burglary. Appellants each argue that the two convictions violate R.C. 2941.25, which prohibits multiple convictions for allied offenses of similar import.[4]
The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment and provides that no person shall be twice put in jeopardy of life or limb for the same offense.State v. Melvan (1992), 80 Ohio App.3d 443, 448. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. Grady v. Corbin (1990), 495 U.S. 508,516, 110 S.Ct. 2084, 2090. The violation of two statutory provisions will not constitute the commission of a single offense and proscribe multiple punishments where "each provision requires proof of a fact which the other does not."Blockburger v. United States (1932), 284 U.S. 299, 304,52 S.Ct. 180, 182.
R.C. 2941.25, the allied offenses statute, states:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
To determine whether two offenses are allied offenses of similar import, the following two-step analysis is applied:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. (Emphasis sic.)
State v. Nicholas (1993), 66 Ohio St.3d 431, 434. Thus, if two offenses are not of the same or similar kind, or if they are of similar import but were committed separately or with a separate animus, both convictions may stand. State v. Williams (May 22, 1980), Cuyahoga App. No. 41378, unreported, at 4.
In the case at bar, both appellants were convicted of assault under R.C. 2903.13(A) which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Both appellants were also convicted of aggravated burglary under R.C. 2911.11 (A)(1), which states that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
Assault is an offense against another's person while aggravated burglary is an offense against property. SeeState v. Jackson (1985), 21 Ohio App.3d 157. Aggravated burglary requires an unpermitted entry into an occupied structure, which assault does not. Thus, the essence of an aggravated burglary charge is the trespass with the intent to commit a criminal offense. See State v. Jones (Dec. 17, 1993), Trumbull App. No. 92-T-4764, unreported. Assault, on the other hand, requires the offender to cause or attempt to cause physical harm. Because assault need not occur in an occupied structure, it follows that the commission of assault will not result in the commission of aggravated burglary. With regard to aggravated burglary, an offender trespassing into an occupied structure and threatening to inflict physical harm on another could be found guilty of aggravated burglary but not assault. While aggravated burglary may involve the purpose to commit an assault, it does not require the completion of that assault. See id. We therefore find that assault pursuant to R.C.2903.13(A) and aggravated burglary pursuant to R.C.2911.11(A)(1) are not allied offenses of similar import under R.C. 2941.25.
In addition, we find that the two offenses were committed separately. The evidence shows that the offense of aggravated burglary was complete when appellants forced their way into Fields' apartment with the intent to commit assault. Whether the assault was actually committed is irrelevant to a charge of aggravated burglary. See State v. Estepp (Jan. 18, 1989), Hamilton App. No. C-880052, unreported, at 8, citing to Statev. Frazier (1979), 58 Ohio St.2d 253. "The forced entry into the victims' home preceded the beating and was alone sufficient to accomplish the burglary." Frazier at 256. The subsequent beating of Fields by both appellants gave rise to the new and dissimilar charge of assault, for which appellants could be separately sentenced.
We therefore find that appellants' convictions for both the offense of aggravated burglary and the offense of assault did not violate R.C. 2941.25. Byrd's first assignment of error and Plummer's second assignment of error are accordingly overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] When referred together, Byrd and Plummer will be referred to as appellants. However, when referred to separately, they will be referred to by their last names.
[2] Appellants do not deny that they went to Fields' apartment in October 1997. They claim however that they went on October 21 while plaintiff-appellee, the state of Ohio, claims that they went on October 22.
[3] By entry filed March 31, 1998, the trial court consolidated the two cases for trial.
[4] While Byrd's assignment of error refers to the doctrine of lesser included offense, the argument under the assignment solely and unequivocally refers to the doctrine of allied offenses of similar import. As a result, we will consider the assignment under the latter doctrine.