OPINION
Defendant-Appellant, Richard D. Studer, appeals a judgment of the Court of Common Pleas of Mercer County entered pursuant to a jury verdict of guilty on one count of Involuntary Manslaughter, a felony of the first degree in violation of R.C. 2903.04(A), for the death of Appellant's fifteen-month-old daughter, Tracy Studer, as a result of Shaken Baby Impact Syndrome. For the reasons set forth in this opinion, we affirm the judgment of the trial court.
The evidence shows that Appellant had been home alone with Tracy and his two other young children since approximately 6 p.m. on the evening of September 14, 1997. At around 11 p.m. that night, Tracy began to vomit and choke on a mucous-like substance. Appellant called 911 and attempted to resuscitate the child himself. Thereafter, the ambulance arrived and transported Tracy to the emergency room, however, the baby could not be revived. A subsequent autopsy indicated that the cause of death appeared to be Shaken Baby Impact Syndrome and that the shaking occurred approximately one hour prior to the child's sudden illness. A police investigation quickly ensued.
On September 16, 1998, Appellant made both an oral and a written statement to the Mercer County Sheriff's Department indicating that he shook the child "pretty hard" because he was angry that Tracy was playing with his answering machine and it appeared that she may have caused some important, business-related messages to be erased. On September 18, 1997, the Mercer County Grand Jury indicted Appellant on the aforementioned charge. Appellant subsequently entered a not guilty plea at his October 2nd arraignment and the cause was set for a jury trial. Appellant then filed a motion to suppress the September 16th statements that he made to the authorities regarding the events that took place on the night of Tracy's death. The trial court conducted a hearing on the matter and the motion was later denied.
Thereafter, Appellant entered into a negotiated plea agreement whereby he agreed to withdraw his prior plea and plead no contest to a lesser charge of involuntary manslaughter, a third degree felony. As part of the plea agreement, the parties entered into a stipulation of facts. The trial court subsequently accepted Appellant's plea and upon hearing the facts, entered a finding of guilt that was reduced to a judgment entry on May 18, 1998. Sentencing was delayed to allow for a presentence investigation.
However, on July 28, 1998, prior to sentencing, the parties filed a joint motion to vacate the plea agreement and to set aside Appellant's conviction due to a mutual misunderstanding of the effect that the stipulated facts would have on sentencing. The court granted the parties' motion on the same day it was filed and the matter was again set for jury trial.
The trial took place in November 1998 and, after hearing all of the evidence presented, the jury returned a guilty verdict. On December 10, 1998, Appellant was sentenced to serve eight years in the Ohio Department of Rehabilitation and Correction. Appellant then filed the instant appeal, asserting five assignments of error for our consideration and review.
Assignment of Error I
 The trial court erred when it failed to suppress Defendant's pre-arrest statement which was obtained by law enforcement officers who had created a situation where they reduced Defendant's ability [to] resists [sic] suggestion, then suggested the answers, and obtained a false confession.
Appellant argues that the trial court erred in denying his motion to suppress. He claims his written and oral statements made to the Mercer County Sheriff's Department the day after Tracy's death were involuntary due to the officers engaging in psychological coercion in order to prompt the confession. In support of his argument, Appellant relies on the testimony of Dr. James P. Reardon, a licensed psychologist, who testified at the suppression hearing that Appellant was most likely experiencing the symptoms of post-traumatic stress disorder at the time he spoke to the officers and that his fragile mental state made him "highly susceptible" to admissions of guilt.
In addition to the doctor's testimony, Appellant also took the witness stand at the hearing wherein he stated that the officers were strongly suggesting that he shook the baby hard enough to kill her. Appellant then testified that he just told the officers what he thought they wanted to hear so that he would be allowed to leave to make funeral arrangements for his daughter.
After taking the matter under advisement, the trial court denied Appellant's motion based upon a finding that, among others things, Appellant made the statements voluntarily and there was no evidence of coercive misconduct. We find that the trial court did not err in making that finding.
In determining the propriety of a motion to suppress, the trial court takes on the role of trier of fact, and consequently, is in the best position to resolve any factual questions and evaluate the credibility of witnesses. State v. Melvan (1992),80 Ohio App.3d 443, 447; State v. Clay (1973), 34 Ohio St.2d 250. The findings of fact pronounced by the trial court will not be reversed as long as they are supported by competent, credible evidence. Melvan, 80 Ohio App.3d 443 at 447.
A defendant's statement is voluntary if it can be deemed " the product of an essentially free and unconstrained choice by its maker." State v. Wiles (1991), 59 Ohio St.3d 71, 81. In deciding whether a confession was the product of free choice, the court must employ a "totality of the circumstances" test. State v. Edwards (1976), 49 Ohio St.2d 31, 40. A review of the totality of the circumstances should include the consideration of certain factors, including "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment and the existence of threat or inducement." Id. Further, although the mental condition of the defendant may also be an important factor, it "does not justify a conclusion that * * * [the] mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional `voluntariness.'" State v. Dailey (1990), 53 Ohio St.3d 88,92, citing Colorado v. Connelly (1986), 479 U.S. 157,164.
In the case sub judice, a review of the circumstances surrounding Appellant's conversation with the police fails to support Appellant's assertion that his statement was the product of psychological coercion by the police. The evidence reveals that Appellant volunteered to speak with investigators about Tracy's death at the Mercer County Sheriff's Department. Appellant arrived at the office at approximately 9:05 a.m. on September 16, 1997, and, within thirty minutes of his arrival, Appellant confessed to shaking the child "pretty hard" prior to her becoming ill because he was angry that she was playing with his answering machine.
Pat Elking and Brian Donovan, the detectives who conducted the interview, testified that they told Appellant he was free to leave at any time and that they did not make any promises of leniency in connection with the statement. Appellant was not arrested that day; he was merely informed that his statement would be forwarded to the prosecutor's office.
The record also reflects that Appellant did not appear to the officers to have any mental disabilities that would render him unable to provide a voluntary statement. The officers testified that Appellant appeared calm and stated that he was "more than willing" to cooperate. Further, it is apparent that Appellant has had prior experience with the criminal process. In fact, the evidence reveals that Appellant had apparently been arrested for driving under the influence within the same week as Tracy's death and he had met with his attorney right after the child died to discuss the pending misdemeanor case. The entire interview with the police lasted approximately ninety minutes and there was no evidence of physical deprivation or mistreatment.
Based upon the foregoing, we find that the trial court's determination that Appellant made a voluntary statement to the police is supported by competent, credible evidence. Although Appellant may have suffered from some psychological impairment due to the death of his child, in the absence of any evidence of official coercion, Appellant's mental condition alone will not support the suppression of his statement.
Appellant's first assignment of error is overruled.
Assignment of Error II
 The trial court erred in not granting the Defendant's Motion for Definite Charge.
 On May 11, 1998, Appellant filed a document captioned "Motion for Definite Charge" requesting the court to adopt the State's theory that Tracy Studer died as a result of the shaking that occurred approximately one hour before Appellant contacted 911 emergency services. Appellant wanted the "definite charge" reduced to writing because he was concerned that, depending on the evidence presented, the state could change the theory of its case during the course of the trial. The trial court denied the motion the same day it was filed as substantively improper and untimely. For the following reasons, we agree with the trial court's decision.
A review of the Rules of Criminal Procedure reveals that a motion for a "definite charge" does not exist. The most analogous mechanism to such a motion is a request for a bill of particulars, which requires the state to "[set] up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." Crim.R. 7(E). Although Appellant argues that he was not requesting a bill of particulars, it is obvious that his goal was to gain knowledge of the state's specific theory of the case. This is precisely the goal that a bill of particulars would advance. State v. Sellards (1985), 17 Ohio St.3d 169,171. Thus, we find that Appellant's motion cannot be distinguished from a request for a bill of particulars.
With that stated, we further note that under the Rules of Criminal Procedure, a defendant may request a bill of particulars "within twenty-one days after arraignment but not later than seven days before trial" or, if outside that time limit, upon court order. Crim.R. 7(E). The record in this case demonstrates that Appellant was arraigned on October 2, 1997 and the motion for a "definite charge" was not filed until May 11, 1998. There is no evidence tending to show that Appellant attempted to obtain a court order, as set forth in the above mentioned rule, and the motion was clearly filed outside the prescribed time limits. Based upon these facts, we conclude that the trial court did not err in denying Appellant's motion.
Appellant's second assignment of error is overruled.
Assignment of Error III
 The court erred when it failed to dismiss due to violation of the Defendant's constitutional right to a speedy trial.
R.C. 2945.71 governs the calculation of time with respect to an offender's right to a speedy trial. This statute provides that a defendant charged with a felony offense, as in this case, must be brought to trial within 270 days after his arrest. The statute also states that three days are to be counted for each day the offender is held in jail.
In this case, Appellant was arrested on September 17, 1997 and released on an unsecured recognizance bond two days later, on September 19, 1997. On October 17, 1997, Appellant filed a motion to suppress evidence, which the trial court overruled on January 8, 1998. Appellant concedes that the speedy trial time was tolled as a result of filing the motion to suppress, and that the time resumed once the court decided the suppression issue. See, generally, State v. Brownlow (1991), 75 Ohio App.3d 88; State v. Walker (1974), 42 Ohio App.2d 41. Appellant then entered a no contest plea on May 14, 1998 and the judgment entry of guilt was journalized on May 18, 1998.
Thereafter, on July 28, 1998, prior to sentencing, both parties filed a joint motion to withdraw Appellant's no contest plea and to vacate the finding of guilt. The court granted the motion and the matter was again set for a jury trial, which did not commence until November 1998. Appellant, thus, argues that his right to a speedy trial was violated because when the case finally came before the jury, more than 270 days from his arrest had passed. We disagree and find Appellant's argument not well taken.
Relevant case law states that R.C. 2945.71 "has no application when a defendant has asked for his no contest plea to be vacated after his conviction." State v. Davis (July 29, 1997), Montgomery App. No. 16050, unreported. In that case, the court relied upon the ruling in State v. McAllister (1977), 53 Ohio App.2d 176, wherein it was held that the provisions set forth in R.C. 2945.71 only apply to the original trial following an offender's arrest. The Davis court reasoned that a no contest plea, coupled with the resulting conviction, constitutes a defendant's original trial. Thus, if a defendant is successful in vacating a no contest plea after he has been convicted, as in the case at bar, the mandate contained in R.C. 2945.71 is no longer applicable because any subsequent proceedings are not considered part of the original trial. Based upon the reasoning set forth in Davis, supra, we find that that the trial court did not err in refusing to dismiss this case for a violation of Appellant's statutory right to a speedy trial.
Since the statutory time limits do not apply after the vacation of the no contest plea, the only limitations on the time within which Appellant thereafter had to be brought to trial are the constitutional requirements of the Sixth Amendment of the United States Constitution and Section 10, Article I, of the Ohio Constitution. McAllister at page 179, citing Barker v. Wingo (1972), 407 U.S. 514. See, also, State v. Gettys (1976),49 Ohio App.2d 241; State v. Bound (1975),43 Ohio App.2d 44.
In order to trigger a constitutional speedy trial analysis pursuant to the standards set forth in Barker, Appellant must allege and establish that the interval between accusation and trial has become a "presumptively prejudicial" delay. As the Supreme Court of the United States noted with approval in Doggett v. United States (1992), 505 U.S. 647, 652, "courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Therefore, we find that Appellant herein has made the threshold showing that the nearly fourteen month delay between the filing of the complaint in the Celina Municipal Court and the trial was presumptively prejudicial. Consequently, we must now turn to discuss whether this delay required dismissal of the case.
In Barker, the Court adopted a balancing test, identifying four factors to be weighed in determining whether a defendant's constitutional right to a speedy trial have been violated: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. Barker, 407 U.S. 514 at 530.
With regard to the first factor, we note that the delay was only slightly longer than the minimum to trigger this analysis. In analyzing the second factor, which is the reason for the delay, we acknowledge that Appellant concedes that nearly three months of the delay were attributable to his suppression motion. The record also demonstrates that almost three months of the delay occurred because of Appellant's choice to vacate the no contest plea. Although Appellant argues that the state was solely responsible for this action, it is clear that the parties made a joint motion to vacate the plea, which was signed by counsel for the defense. Indeed, after conviction, a plea can only be withdrawn by the defendant; never by the State alone. In addition, the record further demonstrates that approximately one month of the delay occurred because of the unavailability of a material witness, a reason that the Barker court found to be a valid justification for delay.
With respect to the third factor, we find that Appellant did assert his right to a speedy trial, albeit the assertion was made pursuant to the statutorily mandated time limits of R.C. 2945.71, which we have already held did not apply after the withdrawal of the no contest plea. Nonetheless, the assertion of this right was not made until November 9, 1998, the day before the trial commenced. We note that Appellant did enter an objection to a last-minute continuance of the trial date, which was granted on account of the unavailable witness; however, Appellant asserted no speedy trial rights violation at that time.
Finally, we must consider the fourth factor, which is prejudice to the defendant. In Barker, the Supreme Court observed that:
 Prejudice * * * should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.
Barker, 407 U.S. 514 at 532.
Appellant was not incarcerated during any period of the delay, excepting the first three days prior to his initial appearance on the charge, and he has not alleged nor demonstrated that his defense was impaired in any fashion by the delay. In addition, a substantial portion of the delay herein is either attributable to Appellant or justified on other grounds.
Based upon the foregoing examination of the factors contained in Barker, supra, we find that the delay in this case did not violate Appellant's speed trial rights as guaranteed by the United States or Ohio constitutions.
Appellant's third assignment of error is overruled.
Assignment of Error IV
 The court erred in not allowing the Defendant to withdraw from evidence, Exhibit "G" of the court, which had not been given to Defendant as discovery and was first shown to Defendant during trial and inadvertently admitted, containing prejudicial information.
During the jury trial in this case, counsel for Appellant used Detective Elking's report on the investigation into Tracy's death when questioning certain witnesses. Counsel had the report marked as Defense "Exhibit G" and asked that the report be admitted into evidence. The State of Ohio had no objection to its admission.
Thereafter, upon disclosing to the court that certain prejudicial material was contained in the report, Appellant's attorney asked the court to either allow him to redact various portions of the document or to withdraw it as an exhibit. The court asked counsel to provide a list of the statements he wanted redacted, however, Appellant's attorney refused, stating that he wasn't ready to do so at that time. The court then denied Appellant's requests and the report was eventually provided to the jury as properly admitted evidence. Appellant now asserts that the trial court erred in denying his requests with respect to "Exhibit G" because of the prejudicial material that the jury was permitted to view.
We do not agree with Appellant's assertion since any error pertaining to the admission of this document appears to have been invited. The doctrine of invited error "prohibits a party who induces error in the trial court from taking advantage of such error on appeal." State v. Woodruff (1983), 10 Ohio App.3d 326,327. Here, counsel for Appellant asked to have the detective's report marked, he made use of it during questioning and, most significantly, he asked to have it admitted into evidence. Although Appellant's attorney subsequently made a specific request to redact prejudicial portions of the document, he refused to do so when given the opportunity. Appellant cannot now demand from this court relief from the ramifications of evidence that he chose to use and admit.
Appellant's fourth assignment of error is overruled.
Assignment of Error V
 The court erred in applying sentencing law [sic] and imposed a sentence inconsistent with the statutory criteria and therefore it is a sentence contrary to law.
R.C. 2929.14(A)(1) provides that a sentence on a felony of the first degree, such as in this case, may properly range from three years to ten years. R.C. 2929.12 mandates that the court, in making the final sentencing determination, shall consider certain factors relating to seriousness and recidivism to arrive at an appropriate result.
Particularly, R.C. 2929.12(B) states that the court shall consider the following factors to determine whether the "offender's conduct is more serious than conduct normally constituting the offense":
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
R.C. 2929.12(C) states that the court shall also consider the following to determine whether "the offender's conduct is less serious than conduct normally constituting the offense":
(1) The victim induced or facilitated the offense.
 (2) In committing the offense, the offender acted under strong provocation.
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
R.C. 2929.12(D) requires the sentencing court to consider the following to determine whether "the offender is likely to commit future crimes:"
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * *.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense * * *.
(5) The offender shows no genuine remorse for the offense.
Finally, R.C. 2929.12(E) sets forth the criteria the sentencing court must consider determining whether the offender is not likely to commit future crime:
 (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
(5) The offender shows genuine remorse for the offense.
It is obvious from both the sentencing hearing transcript and the judgment entry issued in the case at bar that the trial court, in considering all of the foregoing factors, made the required findings that Appellant's conduct was more serious and that he was likely to commit future crimes.
With respect to the issue of seriousness, the court found that Tracy Studer suffered serious physical harm, that her physical injuries were exacerbated by her age and that Tracy's relationship with Appellant facilitated the offense. Appellant argues that these findings are inherently contrary to law, since the age of the child and the relationship to the offender are always going to be essential aspects of a "shaken baby case". Although we acknowledge that age and relationship to the offender will always be a factor in cases of this nature, we cannot conclude that a trial court should be precluded from examining these factors when determining an appropriate sentence. See State v. Hess (May 13, 1999), Franklin App. No. 98AP-983, unreported. A sentencing court must be able to analyze the particular facts of each case to properly enter the findings required by the felony sentencing laws. Id. We must also point out that the language of the statute does not prohibit courts from considering the factors set forth in R.C. 2929.12 in these types of cases or from any other offense that would include similar factors as an essential element of the crime.
With respect to the issue of recidivism, the court found that Appellant was likely to commit future crimes because of the finding that Appellant has a history of criminal convictions and that he has failed to respond favorably to probation. Appellant argues that those findings are contrary to law because Appellant had led a law-abiding life for several years prior to the instant offense and that he did not fail to respond to probation. We are not convinced. The evidence revealed that Appellant was arrested for a misdemeanor offense just days before Tracy's death. In addition, although Appellant argues that the trial court erred in finding that he did not respond well to probation, the presentence investigation report, which the court considered and made available to counsel for the defense, indicates that court records show that Appellant did have a probation violation charged against him in 1993.
In addition to the foregoing arguments, Appellant also asserts that certain other findings made by the trial court were erroneous. In particular, the court found that the minimum prison term would demean the seriousness of the offense and not protect the public from future crime by the offender. Appellant also claims that the court erred in failing to find that substantial mitigation evidence existed and/or that Appellant was genuinely remorseful for his actions.
Based upon our independent review of the sentencing record, including the presentence investigation report, we find substantial evidence, that if accepted by the trial court, supports the trial court's conclusions. Therefore, we cannot clearly and convincingly conclude that the trial court rendered a prison sentence that was contrary to law.
Appellant's fifth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT, P.J., and HADLEY, J., concur.