[Cite as *State v. Smith*, 2014-Ohio-2186.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100338

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMETRIUS SMITH

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-569766-A

**BEFORE:** McCormack, J., Rocco, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 22, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Andrew T. Gatti
Carl Sullivan
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Demetrius Smith, appeals from his conviction of aggravated robbery, kidnapping, petty theft, having a weapon while under disability, and possession of criminal tools, with firearm specifications. On appeal, he claims his conviction was not supported by sufficient evidence and against the manifest weight of the evidence. He also complains the trial court failed to address his pro se motion to dismiss on grounds of speedy trial violations. After a careful review of the record and applicable law, we affirm the trial court.

{¶2} Smith and his codefendant, Antoine Tate, were involved in a robbery incident. The incident led to an indictment of Smith for aggravated robbery,[1] kidnapping (both accompanied with a one-year and three-year firearm specification), petty theft, having a weapon while under disability, and possession of criminal tools. Both defendants pleaded not guilty and were tried together to the bench after they waived the jury trial. At trial, the state presented five witnesses: the victim, his girlfriend, and three police officers.

---

[1] Smith was charged with and convicted of aggravated robbery as defined in R.C. 2911.01(A)(1), which states: "(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

## Testimony at Trial

**{¶3}** The victim, Demetrius Patterson, testified that, around 10:20 p.m. on December 10, 2012, he and his girlfriend, Charice Littlejohn, and a friend, "Ron," went to Patterson's cousin's apartment to have him fix Littlejohn's computer. After they arrived, Patterson exited his car and walked toward his cousin's apartment. Littlejohn and "Ron" walked about five feet behind him. His cousin came to the window, and they started to exchange greetings.

**{¶4}** Suddenly, two men, appellant Smith and his codefendant Tate — Smith in a red hoodie under a jacket and Tate in a black hoodie — came around the corner and they "pulled a gun out on him." Tate put the gun to Patterson's head and said, "Give me your gun." Patterson responded, "My gun? * * * I don't roll like that." Tate then smacked Patterson with his gun and passed it to Smith. According to Patterson, Smith, who seemed to be taking orders from Tate and "acted like he really didn't want to do it," lightly tapped Patterson with the gun. Smith went through his pockets and took his cell phone and wallet. Smith and Tate then told Patterson to lie face down on the ground and started to kick him. Patterson yelled for help, fearing for his life. The two men then casually walked away. Patterson ran to his cousin's apartment to call the police.

**{¶5}** Patterson testified that, after the police officers arrived, he got into his car and drove to meet them. He identified Smith, who was quickly apprehended by the police. When Smith was placed in the back of the police vehicle, he kept shaking his head and accused Patterson of "snitching." Patterson testified that, after identifying

Smith to the police, he used an app in his girlfriend's cell phone to locate his cell phone. He found his phone 10 or 15 feet away from where the police apprehended Smith.

{¶6} Patterson described the gun involved in the incident as chrome or silver-colored, with a black handle. The gun was submitted as the state's exhibit No. 7, and Patterson identified it in court. On cross-examination, Patterson testified he was robbed of a $100 bill. He denied he went to the area that night to purchase drugs or pulled a gun on Tate in an attempt to rob Tate.

{¶7} Patterson's girlfriend, Littlejohn, substantially corroborated his testimony. She testified that on the night of the incident, she and Patterson drove to his cousin's house to get her computer repaired and upgraded so she could do a PowerPoint presentation for a class. When they arrived, Patterson exited his vehicle first and she followed behind. The next thing she knew, she heard him scream. She looked up and saw he was being robbed by two men, one in a red hoodie and one in a black hoodie. Patterson was lying face down on the ground. The one in the red hoodie (Smith) had a gun and passed the gun to the other man (Tate), who was kicking Patterson, patting him down, and going through his pockets. Watching the event and feeling helpless, she called the police immediately. The two men then walked away "peacefully," as if they did nothing wrong. She corroborated the majority of Patterson's testimony, except she testified that Patterson did not have any money in his wallet except for a "good-luck" $2 bill. She identified Smith in court as the man in the red hoodie.

{¶8} CMHA Officer Larry Jones testified he and his partner, Officer Demetrius Jackson, responded to a dispatch regarding a victim robbed at gunpoint at 4908 Quincy. The suspects were reported to wear dark clothing, one of them in a red hoodie. The officers soon arrived near the scene and observed two men walking northbound, one wearing a red hoodie, less than 100 feet away from 4908 Quincy. Officer Jones recognized Smith, the one in the red hoodie, from previous encounters with him. The officers then pulled over in a parking lot to stop the two men. As Officer Jackson approached them, Tate took off running. Officer Jackson chased after Tate while Officer Jones took Smith into custody.

{¶9} Officer Jones testified that, while he placed Smith inside his police vehicle, Patterson drove up and jumped out of his vehicle, saying "[t]hat's him" and "[t]hat's one of them." Patterson informed Officer Jones he was the one who reported the robbery and told the officer his cell phone and some money were taken. Officer Jones then helped Patterson locate his cell phone. Officer Jones testified that the cell phone was found in a grassy area, three feet from where the two men were stopped by the officers.

{¶10} Officer Jones testified that, while sitting in the back of the police vehicle, Smith kept saying "You don't have anything." Officer Jones then heard Officer Jackson, who chased Tate on foot, reporting over the radio that he recovered a silver or chrome-colored automatic .45. When Officer Jones informed Smith of the fact, Smith "got quiet." Officer Jones testified that, after Tate was apprehended and placed in the

backseat of the same police vehicle where Smith was being held, Smith said, "All right. The gun's mine's [sic] and the drugs is [sic] his."

{¶11} CMHA Officer Demetrius Jackson, Officer Jones's partner, testified that on the night of the incident, he and Officer Jones received a broadcast about a robbery at 4908 Quincy involving two suspects, one in a black hoodie and one in a red hoodie. When they found two men matching the description, the one in red stopped, the one in black fled, and Officer Jackson gave chase on foot. While being chased, the man removed a weapon from his waistband and threw it on top of an overhang. Officer Jackson eventually caught up with the man but had to tase him, because he would not comply with the order to show his hands. He was found with crack cocaine and $205 in his person. On cross-examination, Officer Jackson acknowledged that there was no physical evidence linking Smith to the gun retrieved from the scene.

{¶12} CMHA Officer Kyle Flagg testified he received a call for an armed robbery in progress at 4908 Quincy around 10:00 p.m. on the night of the incident. His patrol vehicle was in the vicinity. He arrived at the scene in less than 30 seconds. Patterson and Littlejohn appeared very emotional and told the officer they just got robbed at gunpoint. They pointed to the direction the suspects were walking. Officer Flagg saw two men walking away, one in black and the other man in a red hoodie. He radioed the information to Officer Jones and Officer Jackson. While Officer Jackson chased one of the suspects on foot, Officer Flagg drove his zone car and tried to intercept the suspect. He learned over the radio the suspect removed a gun from his waistband and threw it.

{¶13} Appellant Smith did not testify but his codefendant Tate took the stand and offered a drastically different account of the event than what Patterson and his girlfriend described. Tate testified he sold drugs for a living and the incident was a drug deal gone bad. On the day of the incident, he received a call from "Lisa," a "crack head," who informed him that there were individuals in the area of 4908 Quincy wanting to buy drugs. Tate went over to the area with Smith. When he got there, he saw a man in front the apartment building. Tate asked him, "Did Lisa send you down?" The man answered "yes" and asked if Tate had any "good stuff." Tate showed the man the drugs, and the man asked how much the drugs cost and started to reach into his pocket. Instead of money, he pulled out a black handgun. Tate "rushed" him, "tussled" with him, and grabbed the gun. They both fell to the ground. Tate then got up and took off. He was walking when a police vehicle pulled up to him. He fled because he had drugs and a gun with him. While being chased by a police officer, he tossed the gun onto a roof. Tate denied taking Patterson's money or cell phone.

{¶14} The trial court found Smith guilty of aggravated robbery, kidnapping, petty theft, having a weapon while under disability, and possession of criminal tools, and the firearm specifications. The trial court merged aggravated robbery, kidnapping, and petty theft as allied offenses and sentenced Smith to three years for aggravated robbery, consecutive to a three-year term for the firearm specification. The court also imposed a concurrent 36-month term for having weapons while under disability and a concurrent 12-month term for possession of criminal tools. On appeal, Smith claims his conviction

is not supported by sufficient evidence and against the manifest weight of the evidence. He also argues his speedy trial rights were violated.

### Sufficiency

{¶15} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶16} The gist of Smith's sufficiency claim is that he did not have the gun in his possession during the robbery incident or afterwards. Smith is correct that the state did not present physical or forensic evidence linking him to the gun disposed of by his codefendant and retrieved by the police. However, although physical evidence may be helpful to prove a case, it is not necessary. Patterson and Littlejohn each testified that both Smith and Tate robbed Patterson and Smith had possession of the gun at one point during the robbery. Patterson also testified Smith used the gun to hit him, albeit reluctantly. These eyewitnesses' testimony, if believed, was sufficient direct evidence

upon which a rational trier of fact could rely in finding Smith guilty beyond a reasonable doubt. "The lack of physical evidence does not undermine an eyewitness's testimony that, if found credible, is sufficient to sustain a conviction." *State v. Totty*, 2d Dist. Montgomery No. 23372, 2010-Ohio-1234, ¶ 21. When assessing evidentiary sufficiency, we do not second-guess the factfinder's credibility determinations; rather, we ask whether, if believed, the evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765, citing *Jenks*, paragraph two of the syllabus. Construed in favor of the state, the witnesses' testimony in this case was sufficient to support the trial court's finding of guilt. The first assignment lacks merit.

## Manifest Weight

{¶17} Smith also claims his conviction of the various offenses was against the manifest weight of the evidence. Having concluded the evidence on the record is sufficient to support his conviction, we now review the record to determine his conviction is against the manifest weight of the evidence. Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary

power to grant a new trial should be exercised only in the exceptional case

in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717

(1st Dist.1983). "[T]he weight to be given the evidence and the credibility of the

witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230,

227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness

credibility, "the choice between credible witnesses and their conflicting testimony rests

solely with the finder of fact and an appellate court may not substitute its own judgment

for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277

(1986). A factfinder is free to believe all, some, or none of the testimony of each

witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538,

2013-Ohio-1184, ¶ 18.

{¶18} Smith claims the evidence shows he was "merely present" at the scene, and

also argues that the account offered by his codefendant Tate — that *Patterson* tried to

rob *Tate* at gunpoint of Tate's drugs — was more credible. The weight to be given the

conflicting evidence and the credibility of the witnesses is for the trier of fact — in this

case, the trial court — who had an opportunity to view the witnesses and observe their

demeanor. The trial court was aware of the slight inconsistencies in the witnesses's

recounting of the incident. For example, Patterson testified he had a $100 bill in his

wallet, and his girlfriend testified he had a $2 bill, but the police found neither.

Although we consider the credibility of the witnesses in a manifest-weight challenge, we

are mindful that the determination regarding witness credibility rests primarily with the trier of fact. *State v. Clark*, 8th Dist. Cuyahoga No. 94406, 2010-Ohio-5600, ¶ 39. Having considered the entire record, we cannot conclude that, in resolving the conflict in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice in finding Smith guilty. The second assignment of error is also without merit.

## Speedy Trial

{¶19} Prior to trial, Smith filed a pro se motion to dismiss for speedy trial violations. The trial court never ruled on it. On appeal, Smith claims his statutory and constitutional rights to a speedy trial were violated because the trial court did not address his motion.

{¶20} As an initial matter, we note that when the record demonstrates that the trial court never ruled on a motion, the motion is deemed denied. *State v. Ogle*, 2012-Ohio-3693, 975 N.E.2d 563, ¶ 15.

{¶21} Pursuant to R.C. 2945.71, a defendant must be brought to trial within 270 days of arrest in order to effectuate a speedy trial. R.C. 2945.71(C)(2). Moreover, pursuant to R.C. 2945.71(E), each day spent in jail on a pending charge counts as three days toward speedy trial time. Thus, 90 days time in jail would equate to 270 days under the triple-count provision. *See, e.g.*, *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 10.

{¶22} Here, the docket does not clearly reflect when Smith was placed in jail. Smith claims he was arrested on December 10, 2012, and placed in county jail by

December 20, 2013. It also appears he was in jail until August 5, 2013, when the trial took place. The triple-count provision would seem to apply here.

{¶23} The statute, however, provides that a continuance sought by the defense or a reasonable continuance sought by the state is a tolling event for speedy trial purposes. R.C. 2945.72(H). Requests for discovery also tolls the statute. *State v. Boynton*, 8th Dist. Cuyahoga No. 97926, 2010-Ohio-4248, ¶ 56, citing R.C. 2945.72(E) and (H).

{¶24} Here, the docket reflects that on January 4, and 15, 2013, a pretrial was held but continued at the request of the defense because of ongoing discovery. On January 29, 2013, Smith's counsel withdrew and new counsel was appointed, and pretrial was continued at the request of the defense due to ongoing discovery. Another continuance was granted at the defense's request on February 6, 2013, again due to ongoing discovery.

{¶25} On February 14, 2013, yet another request by the defense for continuance, this time citing plea negotiations, was granted. On February 28, 2013, a pretrial was held and the trial was scheduled for April 22, 2013, at the request of the defense. On April 17, 2013, the April 22 trial date was cancelled at the defense's request due to plea negotiations. A final pretrial was held on April 29, 2013, but continued to May 29, 2013, at the defense's request, for the reason of plea negotiations. A trial was then scheduled for June 3, 2013, but subsequently rescheduled for June 17, 2013, again at the defense's request, because of plea negotiations. That trial date was then rescheduled for July 10, 2013, at the defense's request, for plea negotiations, and then for August 5,

2013, by a joint request of the state and the defense. Because all continuances were granted at the defense's request, for reasons of discovery and/or plea negotiations, we find no violation of a statutory speedy trial right. Therefore, a denial of the motion to dismiss on speedy trial grounds would be proper.

{¶26} Smith also claims a violation of his constitutional speedy trial right. The statutory speedy trial provisions of R.C. 2945.71 and the constitutional guarantees found in the Ohio and United States Constitutions are coextensive. *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994). Furthermore, when there is no statutory speedy trial violation, the burden is upon the defendant to show that his constitutional right to a speedy trial has been denied. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, citing *State v. Gettys*, 49 Ohio App.2d 241, 244, 360 N.E.2d 735 (3d Dist.1976).

{¶27} For a claim of constitutional speedy trial right violation, the courts have employed a balancing test enumerated in *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which requires a court to consider (1) the length of delay, (2) the reason for the delay, (3) whether the defendant has asserted his right, and (4) the amount of prejudice to the defendant.

{¶28} Although Smith asserts a violation of his constitutional speedy trial right, he has made no demonstration under the *Barker* test, either before the trial court or on appeal. Because Smith never developed the issue regarding his constitutional right to a speedy trial, we need not undertake the balancing analysis under *Barker*. *Wells* at ¶ 56,

citing *State v. Stokes*, 193 Ohio App.3d 549, 2011-Ohio-2104, 952 N.E.2d 1192, ¶ 9 (12th Dist.). The third assignment of error is without merit.

{¶29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KENNETH A. ROCCO, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR