[Cite as *State v. Ferrell*, 2014-Ohio-4377.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100659

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN FERRELL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574239-A

**BEFORE:** Boyle, A.J., Rocco, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 2, 2014

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street
Suite 303
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Margaret A. Troia
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, John Ferrell, appeals his conviction and sentence in connection with five counts of rape, one count of gross sexual imposition, and two counts of kidnapping, involving two separate children — his daughter, K.O., and his niece, R.O. Finding some merit to the appeal, we affirm the convictions, reverse the sentence, and remand for resentencing.

Procedural History and Facts

{¶2} In May 2013, the Cuyahoga County Grand Jury indicted Ferrell on 16 counts — eight counts of rape, four counts of kidnapping, and four counts of gross sexual imposition. Eleven of the counts involved Ferrell's daughter, K.O. ("daughter") (d.o.b. June 17, 1997), and the remaining five counts involved Ferrell's niece, R.O. (d.o.b. December 19, 1994). The rape and kidnapping counts carried sexual motivation and sexually violent predator specifications.

{¶3} Ferrell pleaded not guilty to the charges, and the matter proceeded to a jury trial. The state presented several witnesses at trial, including daughter and R.O., who testified as to the sexual offenses that Ferrell committed against them.

{¶4} According to daughter's testimony, Ferrell first inappropriately "touched" her and inserted his finger in her vagina when she was around five years old, sleeping over at her father's house in Cleveland. Approximately nine years later, Ferrell, a commercial truck driver, committed several other sexual offenses against daughter at a rest stop in "New York or Pennsylvania" during one of his delivery trips where daughter

accompanied him. The trip occurred in August 2011, prior to daughter's start of her eighth-grade year.

{¶5} Although daughter "never went on any truck trips" with Ferrell again, she did not initially report the incidents because she was "scared." Daughter testified, however, that months following the New York trip, she told two of her cousins and then later told R.O., her other cousin, who is more like a "sister." Daughter ultimately reported the incidents to her high school guidance counselor upon seeking advice on another matter. Daughter also revealed the earlier incident of her childhood when speaking with her high school guidance counselor. The police and the Cuyahoga County Department of Children and Family Services ("CDCFS") became involved immediately following daughter's reporting to the high school guidance counselor.

{¶6} Daughter was 16 years old at the time of the trial.

{¶7} According to R.O.'s testimony, daughter told her about the incidents with Ferrell sometime in 2011 or 2012. In response to daughter's revelations, R.O. stated, "Wow, that's really messed up, and it happened to me too." R.O. testified that Ferrell "molested me when I was younger." Specifically, R.O. explained that Ferrell removed her from a bunk bed during the night and took her to the basement where he "licked" and "rubbed her vagina." R.O. was only six or seven years old at the time and visiting her cousins at a house located in Cleveland, Ohio. R.O. further testified that, when she was seven and one-half years old, Ferrell took her into a bedroom and "rubbed his penis on her vagina." R.O. recalled that the incident occurred when Ferrell and his girlfriend,

Rachel, were babysitting her at her home on Irma Avenue, also in Cleveland, and that Rachel came into the room afterwards and taught her a prayer. R.O. testified that she finally decided to come forward and report the incidents after daughter "ended up coming out with it." The police interviewed R.O. shortly after interviewing daughter regarding the allegations.

{¶8} R.O. was 18 years old at the time of the trial.

{¶9} Rachel Smith, Ferrell's ex-girlfriend, testified that she remembered an occasion where she and Ferrell babysat R.O., and R.O. was in her bedroom with the covers pulled up to her chin. Prior to seeing R.O. upset, Smith observed Ferrell exit R.O.'s bedroom, where the door had previously been closed. Smith testified that R.O. had tears in her eyes and "looked sad." After R.O. refused to tell Smith what was bothering her, Smith prayed with R.O.

{¶10} The state also presented several other witnesses, including daughter's mother and siblings, who corroborated aspects of daughter's testimony. The state further offered testimony to explain the police's investigation and the treatment provided to daughter and R.O. with respect to the CDCFS's investigation of the allegations.

{¶11} At the close of the state's case, the state moved to nolle two of the rape counts and one count of gross sexual imposition relating to offenses involving the daughter, for which the state failed to present evidence to support. The trial court granted the motion and dismissed the counts.

{¶12} Ferrell offered no witnesses at trial.

{¶13} The jury ultimately convicted Ferrell of five counts of rape, one count of kidnapping, and one count of gross sexual imposition for acts that he committed against K.O. The jury further found Ferrell not guilty of rape against R.O. but guilty of the lesser included offense of gross sexual imposition and guilty of kidnapping and another count of gross sexual imposition. Prior to sentencing, the state moved to dismiss the sexually violent specifications attached to the counts.

{¶14} At sentencing, the trial court merged as allied offenses the following offenses: Count 1 (rape) and Count 2 (kidnapping) — the state elected to proceed on the rape count; Count 7 (rape) and Count 11 (kidnapping) — the state elected to proceed on the rape count; Count 12 (lesser included offense of gross sexual imposition), Count 13 (gross sexual imposition), and Count 14 (kidnapping) — the state elected to proceed on the kidnapping count; and Count 15 (gross sexual imposition) and Count 16 (kidnapping) — the state elected to proceed on the kidnapping count. The trial court imposed a prison term on each count, ordering that the counts run consecutive for a total of 75.5 years in prison.

{¶15} Ferrell appeals, raising the following five assignments of error:

I. The jury found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

II. Because there was insufficient evidence to show venue was proper, the trial court erred as a matter of law in failing to dismiss counts three, four, five, six, seven, and eleven as set forth in the indictment.

III. Offenses set forth in counts three, four, five, and six are allied offenses of similar import and should have been merged for sentencing purposes.

IV. Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution.

V. The trial court erred by imposing consecutive sentences.

<u>Manifest Weight of the Evidence</u>

**{¶16}** In his first assignment of error, Ferrell argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶17}** When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id.* Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the factfinder. *Id.* at 388. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id.*

**{¶18}** Ferrell argues that the state's entire case hinged primarily on daughter's and R.O.'s testimony and that the lack of any physical evidence corroborating their testimony renders the verdict against the manifest weight of the evidence. He contends that

daughter and R.O., who are extremely close — "more like sisters" — were not credible and further implies that they conspired to fabricate the allegations against him.

{¶19} With respect to daughter's credibility, Ferrell points to daughter's testimony that she accompanied him to New York to deliver the load on his semi-truck as being directly contradicted by other testimony that Ferrell never made a delivery to New York at that time. He further argues that his delivery route did not allow time for him to pick up daughter. Ferrell also contends that daughter's credibility was also undermined by the contradictory testimony between herself and her high school guidance counselor as the reason why she first sought out her guidance counselor. Daughter testified that she went to see her guidance counselor because of a rumor that daughter was sleeping with her brother. Conversely, daughter's guidance counselor testified that she had no recollection of daughter telling her that and would have remembered such an allegation.

{¶20} The weight to be given the conflicting evidence and the credibility of the witnesses is for the trier of fact who had an opportunity to view the witnesses and observe their demeanor. Here, the jury was aware of these inconsistencies but obviously did not find them to render daughter's testimony completely unreliable. "Although we consider the credibility of the witnesses in a manifest-weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact." *State v. Smith*, 8th Dist. Cuyahoga No. 100338, 2014-Ohio-2186, ¶ 18, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94406, 2010-Ohio-5600, ¶ 39. Based on the other evidence

presented at trial, we cannot say that the jury lost its way in making such a credibility determination.

{¶21} For example, although daughter believed that her father's work trip involved a delivery in New York, the record reveals that he delivered a load to East York, Pennsylvania at the time of the alleged offenses. Daughter acknowledged, however, that the rest stop where the sexual offenses took place could have been in Pennsylvania. Given daughter's age and grade level, the jury could have reasonably found that daughter was confused between East York, Pennsylvania, and New York at the time that she made the trip. As for the trip actually occurring, daughter's testimony was corroborated by her mother, who specifically testified that she remembered her daughter taking a "truck run" in August 2011 with her father before the start of school for "one-two nights."

{¶22} Likewise, even if daughter's stated reason at trial for seeking her guidance counselor's help contradicted with her guidance counselor's recollection, that alone does not require the jury to disregard daughter's entire testimony, including the description of the offenses.

{¶23} As for R.O.'s credibility, Ferrell fails to point to any inconsistencies or conflicting evidence in the record. Instead, he attacks her credibility based on her close relationship with her cousin, the daughter. We find this argument unpersuasive. Notably, the record contains no evidence of any motivation by the daughter or R.O., either individually or collectively, to fabricate a story against Ferrell.

**{¶24}** Having considered the entire record, we cannot conclude that the trial court clearly lost its way and created such a manifest miscarriage of justice in finding Ferrell guilty. The first assignment of error is without merit.

Venue

**{¶25}** In his second assignment of error, Ferrell argues that the rape and gross sexual imposition counts involving his daughter, which allegedly occurred outside of Ohio, should have been dismissed because the state failed to present sufficient evidence of venue.

**{¶26}** Ohio's venue statute, R.C. 2901.12, provides that "the trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). However, in recognizing the modern mobility of criminal offenders and the interest of judicial economy, the statute further provides:

> When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.

R.C. 2901.12(H).

**{¶27}** Here, the state argued that all counts could be tried in Ohio because Ferrell committed the acts as part of a course of criminal conduct. R.C. 2901.12(H) defines, among others, the following as prima facie evidence of a course of criminal conduct:

> (1) The offenses involved the same victim, or victims of the same type or from the same group.

> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship   to another.

**{¶28}** Ferrell argues on appeal that he has no nexus to Cuyahoga County in Ohio to support his convictions for the offenses that allegedly occurred outside of the county. He contends that he has overcome the state's prima facie evidence of a course of criminal conduct by demonstrating a significant time lapse in between the offenses. He further argues that daughter had accompanied him on other truck driving trips where no wrongdoing took place, which occurred after the alleged incident in Cleveland but prior to the New York–Pennsylvania trip. According to Ferrell, these other trips constitute an intervening act that negate any claim of a course of criminal conduct.

**{¶29}** We find Ferrell's arguments unpersuasive. The counts that occurred outside of Ohio involved his daughter. He also committed the same act against his daughter earlier in Cuyahoga County, as well as committing sexual offenses against R.O. in Cuyahoga County. Further, Ferrell facilitated the offenses against his daughter, both in Cuyahoga County and outside the county, while visiting and spending time with her. *See State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 30 (recognizing sufficient evidence of venue — rapes "were committed as a 'course of criminal conduct' as the offenses each involved the same victim * * * and were committed in the same relationship, father-daughter"). Moreover, Ferrell picked his daughter up in Cuyahoga County to take her on the road trip where the crimes were committed and then returned her to Cuyahoga County. *State v. Whitt*, 5th Dist. Coshocton No. 10-CA-10, 2011-Ohio-3022 (venue satisfied in Coshocton County for rapes occurring in defendant's semi-trucks out of state when evidence revealed that the

trips would originate in Coshocton County and defendant would return minor victim to defendant's home in Coshocton County).

{¶30} Based on this record, we find that the state presented sufficient evidence of Ferrell's nexus to Cuyahoga County to satisfy venue. The second assignment of error is overruled.

### Allied Offenses

{¶31} In his third assignment of error, Ferrell argues that the trial court should have merged the three counts of rape (Counts 3, 4, and 5) and single count of gross sexual imposition (Count 6) for the offenses that occurred the first night in his semi-truck during the out-of-state trip. We disagree.

{¶32} When a defendant's conduct results in the commission of two or more "allied" offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A). In determining whether offenses merge, we consider the defendant's conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). If we answer both questions affirmatively, then the offenses are allied offenses of similar import and will be merged. *Johnson* at ¶ 50; *see also State v. Washington*, 137 Ohio St.3d 427,

2013-Ohio-4982, 999 N.E.2d 661, ¶ 13 (offenses of similar import do not merge if the offenses at issue "were committed separately or with a separate animus").

{¶33} Focusing on the fact that these offenses occurred during the out-of-state trip, Ferrell contends that the offenses were committed as part of the same transaction with a single state of mind, namely, "to assault [daughter] throughout the out-of-state trip." We find Ferrell's argument misplaced. The three separate counts of rape pertained to Ferrell's placing (1) his tongue inside daughter's vagina, (2) his finger inside daughter's vagina, and (3) his penis inside daughter's vagina. The count of gross sexual imposition related to Ferrell's touching daughter's breasts. While these offenses all occurred close in time to one another, each offense involved different conduct. Accordingly, we find that these offenses do not merge as allied offenses. *See*, *e.g.*, *State v. Accorinti*, 12th Dist. Butler Nos. CA2012-10-205 and CA2012-11-221, 2013-Ohio-4429, ¶ 16 (recognizing digital penetration and vaginal intercourse "are two distinct types of sexual activity, each constituting a separate crime"); *State v. Trotter,* 8th Dist. Cuyahoga No. 97064, 2012-Ohio-2760, ¶ 45 ("Oral and vaginal rape are not allied offenses."); *State v. Hudson*, 7th Dist. Mahoning No. 11 MA 77, 2013-Ohio-5529 (applying *Johnson* and recognizing that gross sexual imposition and rape do not merge when defendant engages in separate conduct for each offense).

{¶34} The third assignment of error is overruled.

Ineffective Assistance of Counsel and Joinder

{¶35} In his fourth assignment of error, Ferrell argues that his trial counsel was ineffective for failing to move to sever the counts involving daughter from the counts involving R.O. We find no merit to this argument.

{¶36} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶37} Ferrell contends that the joinder of the offenses involving daughter and R.O. was prejudicial and improperly influenced the jury. He argues that the jury convicted him simply because two different victims accused him of the same offenses and, therefore, his trial counsel was ineffective in failing to move for the severance of the offenses.

{¶38} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together * * * or are part of a course of criminal conduct." *State v. Woodson*, 8th Dist. Cuyahoga No. 93476, 2010-Ohio- 5230, ¶ 9, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 94. The law favors joining

multiple offenses in a single trial if the requisites of Crim.R. 8(A) are fulfilled. *Id.* If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance under Crim.R. 14. *Diar* at ¶ 95.

{¶39} "A defendant is not prejudiced by joinder where the joined offenses are 'simple and direct, so that a jury is capable of segregating the proof required for each offense.'" *State v. Wilson*, 2d Dist. Montgomery No. 20910, 2005-Ohio-6666, ¶ 38, quoting *State v. Fletcher*, 2d Dist. Clark No. 2003-CA-62, 2004-Ohio-4517, ¶ 41. Likewise, severance is not required if the evidence would have come in as other acts evidence under Evid.R. 404(B). *Id.*

{¶40} In deciding a claim of ineffective assistance of counsel, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 668 at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted.) *Id.* "Trial strategy, including debatable trial tactics, does not constitute ineffective assistance of counsel." *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 31, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 111. Indeed, the decision to file a motion for separate trials or to proceed with the joinder of the offenses may be a matter of counsel's trial strategy. *Benitez* at ¶ 31, citing *State v. Bishop*, 8th Dist. Cuyahoga No. 53278, 1988 Ohio App. LEXIS 246, *9 (Jan. 21, 1988).

**{¶41}** Here, we find that it is reasonable to presume that trial counsel's decision not to file a motion to sever the offenses was sound trial strategy. Defense counsel could have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on all counts of the indictment at the same time. Indeed, in his closing argument, defense counsel emphasized the close relationship between the two cousins, implying that they fabricated their stories against Ferrell and neither one was credible. Specifically, defense counsel emphasized that R.O. was daughter's best friend, asking the jury to question "why [daughter's] best friend, her backup, comes to her aid and said yeah, happened to me too." Moreover, even if defense counsel had moved for severance, the trial court would have been well within its discretion in maintaining the joinder. *See, e.g., State v. Scott*, 8th Dist. Cuyahoga No. 91890, 2010-Ohio-3057 (no ineffective assistance of counsel when trial counsel failed to move to sever counts of sexual offenses involving a second victim; no prejudice where trial court is well within its authority to deny such a motion).

**{¶42}** Having found that defense counsel's approach constitutes reasonable trial strategy, we find no merit to Ferrell's ineffective assistance of counsel claim. *See Strickland* at 689. The fourth assignment of error is overruled.

Consecutive Sentences

**{¶43}** In his final assignment of error, Ferrell argues that the trial court failed to make the necessary findings to support the imposition of consecutive sentences. We agree.

**{¶44}** Judicial fact-finding is required to overcome the statutory presumption in favor of concurrent sentences. *State v. Bonnell*, Slip Opinion No. 2014-Ohio-3177, ¶ 23. Indeed, "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * * ." *Id*. at ¶ 37.

**{¶45}** Specifically, "R.C. 2929.14(C)(4) requires the trial court to make statutory findings prior to imposing consecutive sentences, and Crim.R. 32(A)(4) * * * directs the court to state those findings at the time of imposing the sentence." *Id.* at ¶ 26. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.

**{¶46}** Here, the trial court made the first two findings but failed to make the third finding to support the imposition of consecutive sentences. In attempting to make the finding, the trial judge erroneously focused on the defendant's history of criminal conduct related to the underlying charges — not his criminal conduct in general. However, given that this case involves two victims, the possibility exists for the trial court to make another finding to support the imposition of consecutive sentences, and therefore we must remand for the trial court to consider the remaining factors of R.C. 2929.14(C)(4). But the trial court is free to impose concurrent sentences if it does not find that consecutive sentences are appropriate.

**{¶47}** We further note that the sentencing hearing on remand is limited to the trial court's consideration of the imposition of consecutive sentences. *See State v. Holdcroft*, 137 Ohio St.3d 526, 531, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 9 ("the defendant and the state may challenge any aspect of the sentence and sentencing hearing, and the appellate court is authorized to modify the sentence or remand for resentencing to fix whatever has been successfully challenged"). At the sentencing hearing, the trial court may determine whether the facts and circumstances of the case warrant the imposition of consecutive sentences. *State v. Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, 880 N.E.2d 896, ¶ 20.

**{¶48}** The final assignment of error is sustained.

**{¶49}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR